UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

Present: The Honorable   JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 350); DEFENDANTS' MOTION FOR ORDER STRIKING FOURTH AMENDED COMPLAINT (DKT. 348); DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT AND FOR SUMMARY JUDGMENT (DKT.358)**

I.   **Introduction**

In this consolidated action, Peter Klune ("Klune"), Dennis Rutherford ("Rutherford"), and Tara Barth ("Tara")[1] (collectively "Plaintiffs") have brought claims against Palo Verde Healthcare District ("Palo Verde"), Trina Sartin ("Sartin"), Sandra Hudson ("Hudson") and Samuel Burton ("Burton")[2] (collectively, "Defendants"). Plaintiffs, who were employees of Palo Verde, contend that their employment was terminated in retaliation for their reporting of certain allegedly unlawful activities that had occurred at Palo Verde. The operative Fourth Amended Complaint ("FAC") advances the following causes of action: (i) violation of 31 U.S.C. § 3730(h) (all Plaintiffs against Palo Verde); (ii) breach of employment contract (Klune against Palo Verde); (iii) retaliatory termination in violation of Cal. Lab. Code § 1102.5 (all Plaintiffs against Palo Verde); (iv) retaliation in violation of the California False Claims Act, Cal. Gov. Code § 12653 (all Plaintiffs against Palo Verde); and (v) violation of 42 U.S.C. § 1983 (all Plaintiffs against Palo Verde, Hudson and Sartin). Dkt. 335.

Klune brought a Motion for Partial Summary Judgment as to his breach of contract claim. Dkt. 350. Defendants opposed (Dkt. 365) and Klune replied (Dkt. 382). Defendants brought a Motion for Order Striking Portions of Fourth Amended Complaint. Dkt. 348. Plaintiffs opposed (Dkt. 368) and Defendants

---

[1]  The use of a first name of a person with the same surname as another party is for clarity only. No disrespect is intended by the use of this common convention.
[2]  Burton was subsequently dismissed as a defendant. Dkt. 321.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

replied (Dkt. 381). Defendants also brought a Motion to Dismiss or Alternatively, for Partial Summary Judgment of Plaintiffs' Sixth Claim and for Punitive Damages, and for Partial Summary Judgment of First, Second, Fourth and Fifth Claims; or for Summary Judgment of Action ("Defendants' Motion for Summary Judgment"). Dkt. 358. Plaintiffs opposed (Dkt. 367) and Defendants replied (Dkt. 383).

A hearing on all of these motions was conducted on February 23, 2015, and they were taken under submission. Dkt. 393. For the reasons stated in this order, Klune's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, the Motion to Strike is GRANTED, and Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.[3]

## II.  **Factual Background**

Palo Verde is a local healthcare district that operates a hospital (the "Hospital") in Blythe, California. Dkt. 335 ¶ 7. Klune was employed as the Chief Executive Officer ('CEO") of Palo Verde from 2009 until January 22, 2013. *Id.* ¶ 23. Rutherford was employed as the Chief Financial Officer of Palo Verde from 2010 until February 28, 2013. *Id.* ¶ 34. Tara was employed as the Chief Nursing Officer of Palo Verde from February 2011 until February 28, 2013. *Id.* ¶ 41.

### A.  Klune's Employment Agreement

Klune and Palo Verde entered his employment contact on February 28, 2011; it was for a three-year period (the "Employment Agreement."). Dkt. 350, Declaration of Dennis Klune ("Klune MSJ Decl.") ¶ 2; Dkt. 350, Ex. 1. Section 2 of the Employment Agreement is designated, "Responsibilities." Dkt. 350, Ex. 1 at 2. It states

> Employee, as CEO, shall be responsible to the District and be responsible for all actions concerning the District's management, operations and finances and in particular the management and operation of Palo Verde Hospital. In particular, he shall be responsible for, but not limited to:
> a. Performing all functions and duties as the Chief Executive Officer of the District and performing other legally permissible and proper duties and functions as the District shall, from time to time, assign in accordance with applicable law.
> b. Interviewing, hiring, reviewing and terminating employees, department heads, and officers.
> c. Managing all aspects of personnel employed by the District.
> d. Managing the provision of accessible high quality health care services to the diverse community that the District serves.
> e. Establishing a preferred practice environment for physicians, nurses, and all allied health care professionals.
> In addition, Employee shall perform such other duties as may be assigned by the District Board of Directors. The District agrees to provide Employee with adequate technology

---

[3] The rulings on the evidentiary objections made in connection with these matters will follow in a separate order.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

(computer and cellular telephone) to accomplish his duties.

*Id.* at 2-3.

Section 3 of the Employment Agreement is designated, "Term of Employment." Dkt. 350, Ex. 1 at 3. Section 3(a) provides:

> This agreement shall be for a term of 3 years commencing the "Effective Date" unless terminated by either party in accordance with this agreement. This Agreement will renew automatically year to year after the initial three year term unless terminated in accordance with the terms of this Agreement.

*Id.*

Section 4 of the Employment Agreement is designated, "Termination by District for Cause." Section 4(a) provides that the employee may be terminated for cause "at any time during this Agreement." *Id.* Section 4(b) provides that, "[i]n the event Employees employment is terminated for cause, based on serious misconduct, he may be terminated immediately." *Id.* "Serious misconduct" is then defined by eight definitions as to what constitutes "serious misconduct." Section 4(b) also provides that, "[t]he District shall deliver Employee a written statement which explains the grounds for termination for Serious Misconduct before his employment is terminated." *Id.* at 4.

Section 5 of the Employment Agreement is labeled, "Termination." *Id.* at 4. Section 5(a) states, "Notwithstanding Section 3(a), Employee may terminate his employment at will provided that he gives the President of the Board of Directors written notice of the same no less than 12 months prior to the effective date of the termination, or a reasonable plan of transition." *Id.* Section 5(b) of the Employment Agreements provides, "Notwithstanding Section 3(a), District may terminate Employee's employment at will provided that it gives Employee severance of no less than 12 months compensation." *Id.*

Under the terms of his contract with Palo Verde, as of the year starting in 2012, the annual cost to Palo Verde of Klune's employment, including benefits, was $490,000. Dkt. 358, Ex. 8.

B.    The Hospital's Patient Transfer Policy

Sartin is a co-owner of Desert Air Ambulance, Inc. ("Desert Air"). Deposition of Trina Sartin ("Sartin Depo."), Dkt. 367, Ex. 3 at 36. It was founded in 2004. *Id.* at 39. More than half of Desert Air's business consists of referrals from the Hospital. *Id.* at 42. Dr. Hossain Sahlolbei is a surgeon at the Hospital. Dkt. 358, Ex. 21. Sahlolbei is also Chief of Staff of the Hospital's Medical Executive Committee ("MEC"). Trask Memo, Dkt.384, Ex. 1 at 2-3. The MEC has five members; all are physicians. *Id.* at 2. The MEC "makes recommendations regarding policies, procedures, and other matters that are regularly and routinely followed by the District Board of Directors." *Id.* "These doctors are not employees of the Hospital – the Board of Directors has very little control over them." *Id.*

In April 2012, Klune received a complaint from an emergency room physician who worked at the Hospital.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

The complaint alerted the Hospital administration that its patient transfer policy could have been in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). Dkt. 384, Ex. 9. Robert Patterson, who was then the general counsel of Palo Verde, received an email from the attorney who represented the emergency room physician. Dkt. 384 Ex. 10. It provided details about certain events at the Hospital. This included a statement that Sahlolbei became upset upon learning that patients had been transferred by a company other than Desert Air. The email also mentioned the physician's decision to have a patient transferred by ground vehicle, which was later changed to air transport by another physician who had not examined the patient. The email stated that this action could have been a "violation of Medicare rules." *Id.* at 41. The email also stated that the Hospital's patient transfer policy may have been in violation of the EMTALA.

In May 2012, an incident summary was completed by the Hospital's Director of Risk Management and Quality Improvement. Dkt. 384 Ex. 11. This report stated that Sahlolbei was contacted regarding the transfer of a patient for whom he was not the attending or consulting physician. The transport of that patient was delayed so that he could be transported by Desert Air rather than by another means that had been available previously.

In response to these communications, Palo Verde, through Klune, retained a healthcare attorney to evaluate the Hospital's patient transfer policy. Klune Decl. ¶ 12. This attorney concluded in a written opinion (the "Waltz Memorandum") that the Hospital's patient transfer policies needed to be revised to ensure that they were in compliance with EMTALA standards. Waltz Memo, Dkt. 384 Ex. 12. This memorandum concluded:

> While we understand that the Hospital is not submitting claims with respect to these [patient transfer] services, it should be noted that the False Claims Act allows liability for both the entity which submits the false claim and any entity which *causes* the submission of a false claim. Thus, if any documentation supplied by the Hospital to the ambulance company was false or materially deficient, resulting in the knowing submission of a false claim by the ambulance company, there is some potential risk to the Hospital as well.

*Id.* at 8 (italics in original).

Thereafter, Klune requested that Tara prepare an updated patient transfer policy that complied with EMTALA standards. Klune Decl. ¶ 12; Barth Decl. ¶ 5; Dkt. 384 Ex. 13. During a May 2012 Palo Verde Board meeting, Klune advised the board regarding the patient transfer issues and provided the Waltz Memorandum. Klune Decl. ¶ 14; Dkt. 384, Ex. 14-15. In June 2012, the Board approved the updated patient transfer policy. Sahlolbei and Sartin spoke at the June Board meeting; each opposed the new policy. *Id.* Ex. 19. Sartin expressed concern about the impact the new policy would have on Desert Air. *Id.,* Ex. 22 at 16.

Another emergency room physician at the Hospital complained in July 2012 regarding violations of the new patient transfer policy. This complaint was that Sahlolbei was pressuring Hospital staff to prioritize the use of Desert Air for air transport, and to use its ground transport services as well. Dkt. 384, Ex. 23.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|-------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

With approval from the Board, Klune retained Jay Christianson, a healthcare attorney, to analyze whether the patient transfers at the Hospital were proper. Klune Decl. ¶ 21. Christianson retained an outside consultant to review six patient transfers by the Hospital to Desert Air in order to advise the District whether those transfers met the "medical necessity" requirements for Medicare reimbursement. Deposition of Val Warhaft ("Warhaft Depo."), Dkt. 384, Ex. 24. The consultant concluded that "it [is] my professional opinion that not one of the six cases reviewed met the requirements for air ambulance transfer." Dkt. 384, Ex. 25 at 39.[4] He also concluded that the six patient transfers did not "coincide with any of the conditions listed in the CMS Ambulance Billing Guide." *Id.* at 38. As the report explained

> Because helicopter and fixed wing air services are a limited and expensive resource, a methodologically rigorous investigation of its effectiveness compared with ground emergency medical services is warranted by facilities choosing medical air transport. Medical necessity is paramount and must be documented to justify the use of this expensive resource.

*Id.* at 38.

The practice of utilizing more expensive services than are medically necessary is referred to as "upcoding." Dkt. 335 ¶ 59. Thereafter, Klune directed the Director of the Emergency Department to conduct a broader study of patient transfers at the Hospital that had occurred between January 3, 2010 and October 7, 2012. Dkt. 384, Ex. 27; Klune Decl. ¶ 22.[5]

C.    Brad's Anesthesiology Contract

In 2009, Sahlolbei negotiated a contract between Dr. Brad Barth ("Brad") and the Hospital. Klune Decl. ¶ 29. Under the agreement, Brad provided anesthesiology services to the Hospital and became its Director of anesthesiology services. Dkt. 384, Ex. 1 at 66-93.The Board approved Brad's employment agreement. Klune Decl. ¶ 29. Pursuant to the agreement, the Hospital agreed to pay Brad $24,000 every two weeks for his anesthesiology services, and $3,000 per week for his services as director of anesthesiology. Dkt. 384-7, Ex. 1 at 66-93. It also provided for a $40,000 relocation fee. *Id.*

On September 23, 2012, Klune discovered that Brad and Sahlolbei had signed a separate agreement (the "Kickback Agreement") regarding Brad's anesthesiology services. The parties to that agreement were Brad and Pars Surgery Inc. ("Pars Surgery"). Sahlolbei signed the agreement on behalf of Pars Surgery. Dkt. 384-7, Ex. 1 at 95-109. That agreement provided that Brad would "immediately deposit any income that he receives as a result of providing services at [Palo Verde] ... into a bank account as directed by PARS SURGERY Inc." *Id.* at 101. Pars Surgery agreed to pay Brad $36,000 per month if he

---

[4] Defendants contend that these facts are disputed by the deposition testimony of Michael Murphy. However, they neither cite to where that testimony is presented in the record, nor quote the testimony.

[5] Plaintiffs submit a "Transfer Log." It consists of a chart of dates, patients, diagnoses and other information. One field is labelled, "Meets Criteria." The Transfer Log states that 39.36% of the listed patients did not meet the criteria. The chart does not explain what criteria were applied in reaching this determination.

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|--------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

was the exclusive anesthesia provider at Palo Verde, and $25,000 per month if there were another anesthesiologist who provided services at Palo Verde. *Id.* It also provided that Brad would receive a $10,000 relocation fee. The Kickback Agreement stated that Pars Surgery "will assist [Brad] who will be responsible for making arrangements satisfactory to [Pars Surgery] and at no additional cost to [Pars Surgery], to provide continuous coverage for his absence, weekends, or vacations." *Id.* at 97. It also provides that "[Brad] is entitled to a total of four weeks of vacation per year, for which [Brad] is responsible to arrange and pay for a qualified anesthesiologist or CRNA to cover its calls. Upon approval by [Pars Surgery], [Brad] is entitled to an average of two weekends off per month when a second anesthesia provider is available. [Brad] will arrange and pay for the Anesthesia coverage for his vacation and the two weekend [sic] off." *Id.* at 101. Klune declares that neither he, the Hospital nor the Board was aware of this separate agreement until September 2012. It was at that time that Brad informed Klune about it. Klune Decl. ¶ 28.

In October 2012, Christensen wrote a memorandum in which he advised Palo Verde about the propriety of the Kickback Agreement between Brad and Pars Surgery. Dkt. 381, Ex. 1 at 38-58. The memorandum concluded that the separate agreement "is likely an illegal kickback agreement under both Federal and State law." *Id.* at 44. It also stated that "[a]ssuming the Hospital was completely unaware" of the agreement, "then the Hospital may not be liable." It then explained that the presence of certain facts could be the basis for liability of the Hospital arising from the Kickback Agreement. It also stated that "[i]f the Hospital confirms that its overpayments to Anesthesiologist resulted in overpayments from the Medi-Cal program, or from any other federally funded program, the Hospital will be obligated to report and return the overpayment within 60 days." *Id.* Christianson recommended that the Hospital self-report to the Department of Health Care Services "any Medi-Cal overpayment." *Id.* at 58.

D.      Reporting of the Conduct

On October 16, 2012, Christianson, with the approval of the Board, reported the patient transfer issues and the Kickback Agreement to the United States Attorney's Office. Dkt. 384, Ex. 28. On October 17, 2012, Christiansen also reported this activity to the Office of Inspector General, Department of Health and Human Services ("OIG"). *Id.* Ex. 30.

On November 19, 2012, Klune, Patterson, and special counsel, Grover Trask, met with the Riverside County District Attorney's Office. Klune Decl. ¶ 25. They provided a memorandum that detailed the following: complaints regarding Sahlolbei's conduct at the Hospital; the Kickback Agreement; background information regarding Hudson and Sartin; the patient transfer issues; and voting issues that could arise when Sartin and Hudson became members of the Board (the "Trask Memo"). Dkt. 384, Ex. 1. There were several attachments to the Trask Memo, including Sahlolbei's agreements with the Hospital, the aforementioned memorandum regarding the Kickback Agreement, Brad's employment agreements, and the complaints and related responses to the patient transfer policy. Both Klune and Rutherford provided information that was incorporated into the Trask Memo. Deposition of Robert Patterson ("Patterson Depo."), Dkt. 384, Ex. 2 at 166-76.

In December 2012, Tara and Rutherford met with a District Attorney investigator regarding these same

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

matters. Rutherford Decl. ¶ 3, Tara Decl. ¶ 9. Klune was interviewed by the investigator on January 10, 2013. Klune Decl. ¶ 26; Dkt. 384, Ex. 31.

E.     Sartin and Hudson as Board Members

Sartin and Hudson were elected to the Palo Verde Board in November 2012. Concerns arose about their potential conflicts of interest due to their financial relationships with Sahlolbei. Klune Decl. ¶ 32. These issues were raised with the District Attorney in November 2012. *Id.; see also* Trask Memo, Dkt. 384, Ex.1. Sartin and Hudson were sworn is as Board members on December 7, 2012. Request for Judicial Notice ('RJN'), RJN, Dkt. 358, Ex. H. On December 11, 2012, the law firm Best Best & Krieger provided a memorandum to the Board. It analyzed the potential financial conflicts that Burton, Sartin and Hudson had as a result of their respective relationships with Sahlolbei, and how these conflicts could violate the Political Reform Act and Cal. Gov't Code § 1090. Dkt. 384, Ex. 37. Klune provided information for this memorandum. Patterson Depo, Dkt. 384, Ex. 2 at 169.

On January 16, 2013, Klune and Rutherford reported to the Board regarding Palo Verde's financial problems. Declaration of Sandra Hudson ("Hudson Decl."), Dkt. 358-38 ¶ 2; Rutherford Decl. ¶ 12. The Rutherford is presentation stated that "significant factors" that led to the financial problems were a reduction in the number of patients who were treated and a "[d]ownward pressure on reimbursement" from Medi-Cal and Medicare. RJN, Dkt. 358, Ex. I.

At the January 22, 2013 Board meeting, Rutherford again reported to the Board regarding Palo Verde's serious financial problems. Hudson Decl. ¶ 4. Hudson declares that "[p]eople were also very upset about the salaries being paid to the executive team at [Palo Verde], particularly given the bad state of finances." *Id.* ¶ 5.

F.     The Termination of Klune and Non-Renewal of the Employment Agreements of Rutherford and Tara

On January 22, 2013, the Board met in closed session. During a subsequent open session the Board reported that it had voted to terminate Klune's employment agreement, effective immediately. RJN, Dkt. 358, Ex. B. On January 31, 2013, Jeffrey Scott, counsel for Palo Verde, sent Klune an email which stated, "[t]his will also confirm that the Board action on January 22, 2013 was to terminate your Employment Contract 'without cause.'" Dkt. 350, Ex. 3.

After Klune was terminated, the Board requested that Rutherford serve as interim CEO. This position was to be in addition to his role as CFO. Rutherford Decl. ¶ 10. In his declaration, Rutherford states,

> One or two days prior to my termination, I was summoned to a meeting by Ms. Sartin and Ms. Hudson. I was surprised to find that Dr. Sahlolbei was also in attendance. They interrogated me regarding various things and made it clear that they wanted to know whether I would "play ball" and go along with their agenda of bringing an end to any further investigation into the illegalities that had been discovered and reported. I made it clear to

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

them this was unacceptable to me.

Rutherford Decl. ¶ 15.

At the February 19, 2013 Board meeting it was reported that the Board "voted 3-2 not to renew [Rutherford's] CFO contract set to expire on February 28, 2013" and "voted 3-2 not to renew [Tara's] CNO contract set to expire on February 28, 2013." RJN, Dkt. 358, Ex. C.

## III.    Motions for Summary Judgment, or in the Alternative, to Dismiss

A.    Legal Standard

1.    Motion to Dismiss under 12(b)(6)

Fed. R. Civ. P. 8(a) provides that, a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." A party may move to dismiss a claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The complaint must state enough facts so that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In deciding a 12(b)(6) motion, the court must assume that allegations in the challenged complaint are true and must construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.* 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)).

"The heightened pleading requirements of Fed. R. Civ. P. 9(b) do not apply to FCA retaliation claims. Instead, a FCA retaliation claim must meet the Rule 8(a) notice pleading standard." *Mendiondo*, 521 F.3d at 1103.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

2. <u>Motion for Summary Judgment</u>

A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); Fed. R. Civ. Proc. 56(e).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(e). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

B.   Application

1.   <u>42 U.S.C. § 1983 Claims</u>

a)   The Claims

Plaintiffs contend that Defendants deprived them of a liberty interest by denying them the right to a public hearing. Thus, they argue that because the basis for their termination was not provided in a setting in which they could respond, they suffered stigmatizing effects of Defendants' statements about the reasons for their termination. As a result, Plaintiffs have brought a claim pursuant to 42 U.S.C. § 1983 for violation of their procedural due process rights.

b)   Legal Standards

A party who brings a claim under § 1983 must establish each of the following: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991). "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3)

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|-------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). "Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to constitutional protection." *Id.* at 1091. "Only if the governing statute compels a result upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, does it create a constitutionally protected property interest." *Id.*

"The liberty interest protected by the due process clause 'encompasses an individual's freedom to work and earn a living.'" *Portman v. County of Santa Clara*, 995 F.2d 898, 907 (9th Cir. 1993) (quoting *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981)). Thus, "when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Bollow*, 650 F.2d at 1100.

To raise constitutional liberty interests, "the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." *Bollow*, 650 F.2d at 1101 (citing *Board of Regents v. Roth*, 408 U.S. 564, 573-74 (1972)). The "stigma" that infringes liberty interests is that which "'seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities.'" *Id.* (quoting *Jablon v. Trustees of California State Colleges*, 482 F.2d 997, 1000 (9th Cir. 1973)). "Charges that carry the stigma of 'moral turpitude' such as dishonesty or immorality 'may implicate a liberty interest, but charges of incompetence or inability to get along with others do not.'" *Portman*, 995 F.2d at 907 (quoting *Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991)). "Moreover, to infringe upon a constitutionally protected liberty interest, the charges must be published." *Id.* "Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'" *Bollow*, 650 F.2d at 1101 (*citing Bishop v. Wood*, 426 U.S. 341, 348 (1975)). Finally, the charge must be made "in the course of" the termination of employment. *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988).

        c)      Application

In the prior Order on Defendants' motion to dismiss, this cause of action was dismissed with leave to amend because Plaintiffs had "failed to plead any facts to support a finding of a temporal nexus between Defendants' statements and the termination." Dkt. 321. Defendants contend that the FAC still fails to do so and that no evidence has been presented that supports the basis for the claims.

        (1)    <u>Section 1983 Claims Based on Alleged Infidelity</u>

One alleged statement upon which § 1983 liability is premised is that Hudson "publicly accused [Tara] and Rutherford of marital infidelity." FAC ¶ 181(a). The FAC alleges that this occurred "on or after December 7, 2012, but before February 20, 2013." *Id.* The FAC later alleges that

        After Klune was terminated on January 22, 2013, but before Barth and Rutherford were
        terminated on February 20, 2013, Defendants Sartin and Hudson met with Rutherford and
        questioned Rutherford regarding (1) his alleged extramarital affair with Barth, and (2)

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

Plaintiff's alleged awareness all along of the Secret Kickback Agreement. In speaking with Rutherford, Sartin and Hudson suggested that these allegations were true and made statements to Rutherford that the allegations were public and that Sartin and Hudson had discussed them with others.

*Id.* ¶ 181(d).

'[A] terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004). "The procedural protections of due process apply if the accuracy of the charge is contested, *there is some public disclosure of the charge,* and it is made in connection with the termination of employment...." *Id.* at 1112 (citing *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773 (9th Cir.1982)) (emphasis in *Cox*). In *Cox*, the Ninth Circuit determined that there was sufficient public disclosure to implicate a liberty interest where stigmatizing information in an employee's personnel file was publicly available under the state's laws. In *Tibbetts v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009), press releases published directly after the plaintiff's discharge were sufficient "publications" to implicate the required liberty interest.

In addition, to infringe a constitutionally protected liberty interest, the stigmatizing statement must be made "in the course of" the termination of employment. *Campanelli v. Bockrath,* 100 F.3d 1476, 1482 (9th Cir. 1996). As noted in the prior Order,

> *Campanelli* held that "the 'in the course of' requirement may be met when defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." 100 F.3d at 1481. As noted, the Ninth Circuit rejected any bright-line test, concluding instead that "there must be some temporal nexus between the employer's statements and the termination." *Id.* at 1483. Some defamatory statements are too remote in time from the termination to be considered made "in the course of the termination." *Id.* Similarly, statements made prior to the actual termination could be considered "in the course of termination" if the requisite temporal nexus is found.[6]

Dkt. 321 at 10.

Tara testified at her deposition that Sahlolbei made private comments to Tara about her attire at work and that he believed Tara and Rutherford were having an affair. Deposition of Tara Barth ("Tara Depo."), Dkt.

---

[6]  *Accord Emery v. Northeast Illinois Regional Commuter R.R. Corp.,* 2003 WL 22176077,at *3 (N.D. Ill. 2003) (although the publication and termination need not occur simultaneously, "statements made weeks (let alone months) before or after termination are not statements made in the context of termination"); *Newton v. Chicago School Reform Bd. of Trustees,* 1997 WL 603838, *7 (N.D. Ill. 1997) (stigmatizing statements made two months prior to termination not considered "incident to [plaintiff's] discharge"); *Malapanis v. Regan,* 340 F.Supp.2d 184, 194 (D. Conn. 2004) (plaintiffs' stigma-plus claim lacked the necessary temporal nexus when the termination came approximately four months after plaintiffs were called "non-responsible bidders" and approximately three months before the press conference where the allegedly defamatory statements were made).

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

358-8 at 19-22. Sahlolbei also suggested to Tara that Hudson believed that Tara was in a relationship with Rutherford. Tara Depo. at 21. Tara testified that "no one was present at th[e] time that Sahlolbei made those statements." *Id*. These statements were made "sometime in the fall" of 2012. *Id*.

Rutherford testified at his deposition that he could not recall any specific disparaging statements made by Hudson or Sartin. Deposition of Dennis Rutherford ("Rutherford Depo."), Dkt. 358-6 at 31-35. He also testified that the "comments were made when" he met with Hudson. Rutherford Depo., Dkt. 358-6 at 32. He stated that he "do[es not] remember specifics." *Id*. The disparaging comments were made "in meetings with her." He believed that the comments were made in meetings sometime after January 22, 2013, once he had been named interim CEO. Rutherford Depo. at 34. But he did not recall the dates on which those meetings occurred. *Id*. Nor did he recall if anyone else was present when the statements were made. Rutherford Depo. at 33. These statements fail to demonstrate any public disclosure of the allegations of infidelity.

In a separate declaration submitted with Plaintiffs' Opposition, Rutherford states that during a meeting with Sartin, Hudson, and Sahlolbei, which occurred "one or two days before his termination," the three accused him of having an affair with Tara.[7] Declaration of Dennis Rutherford ("Rutherford Decl."), Dkt. 367-4 ¶ 15-16. "They told me they had spoken to other employees about the same accusations." *Id*. ¶ 16. This statement does not create a triable issue of material fact because it does not state when these statements were made to employees. Accordingly, there is no evidence of a temporal nexus between these alleged statements and the non-renewal of the employment of Rutherford and Tara. For this reason, there is no evidence from which a reasonable trier of fact could conclude that the alleged statements were made "in the course of the termination" of Rutherford's employment.

Plaintiffs argued during the hearing that Sahlolbei's presence in the meeting is sufficient to constitute "publication" of the defamatory statements. This argument is unpersuasive. The Ninth Circuit has not expressly determined the scope of a "public disclosure" of negative remarks that would, in turn, make appropriate a public proceeding at which the person who was the subject of the remarks can respond to them. In a footnote in *Mustafa v. Clark Cnty. Sch. Dist*., 157 F.3d 1169, 1179 (9th Cir. 1998), the Ninth Circuit observed that "this Circuit has yet to decide whether, in order for due process protections to be triggered, the charges must be made public by the employer itself, nor has this Circuit decided whether the charges must be made public in an official or intentional manner." *Id*. at 1179 n.10. However, the cases in which the right to a hearing has been recognized arose when negative statements were

---

[7] Defendants contend that this declaration contradicts Rutherford's prior deposition testimony and should not be considered. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991). However, this "rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Id*. at 266-67. "[T]he district court must make a factual determination that the contradiction was actually a 'sham.'" *Id*. at 267. Rutherford's declaration does not expressly contradict his deposition testimony. At his deposition, Rutherford testified that he could not recall the specific dates or specific statements that were made. That he now states that he remembers when certain statements were made is not sufficiently in conflict with his prior testimony to show that his present declaration is a sham.

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|--------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

published in newspapers, stated in a press release, or set forth in personnel files that were publicly available. *See Cox*, 359 F.3d at 1110 (stigmatizing information in an employee's personnel file that was publicly available under the state's laws); *Tibbetts,* 567 F.3d at 536 (press releases published directly after the plaintiff's discharge).That a non-party may be present at a meeting during which employment of another person is discussed, is not similar, and does not constitute a public disclosure under this standard. Moreover, in this matter, Sahlolbei's presence is of little significance given that he played a role in many of the related events that are at issue in this matter and served as the Chief of Staff of the Hospital's MEC.

Hudson and Sartin also have qualified immunity. That principle generally protects government officials so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baker v. Racansky,* 887 F.2d 183, 186 (9th Cir. 1989). "Qualified immunity balances 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Tibbets,* 567 F.3d at 535. "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York,* 566 F.3d 817, 821 (9th Cir. 2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

It is not "clearly established" that statements made to an employee in a private meeting at which both government officials and a private person were present, requires a subsequent hearing at which the employee may seek to make public responses to any criticism about his performance as an employee. *Cf. Tibbets*, 567 F.3d at 535 (government official entitled to qualified immunity for statements made in press release because "a reasonable person in [the government official's] position could not have known by recourse to then-extant case law whether a stigmatizing statement made nineteen days after Plaintiffs' termination would violate *Campanelli*'s 'temporal nexus'" test.").

For the foregoing reasons, Plaintiffs have failed to present a triable issue of fact that any statements regarding a supposed extra-marital relationship between Rutherford and Tara were publicly disclosed by Sartin or Hudson in the course of the decision not to renew their respective employment agreements. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' § 1983 claim to the extent it is based on this theory.

(2)     Section 1983 Claims Based on Dishonesty and Complicity in Kickbacks

Plaintiffs contend that Hudson and Sartin "started and proliferated an accusation to other hospital employees and the public at large" that each Plaintiff was aware of the alleged Kickback Agreement between Sahlolbei and Brad. FAC ¶ 181(b). They allege that this occurred "on or after December 11, 2012, but before January 22, 2013, when Klune was terminated." *Id.* Plaintiffs also contend that Hudson

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |


and Sartin accused them of "self-dealing" by setting their own salaries. FAC ¶ 181(c). The FAC alleges that this first occurred during phone calls and through Facebook postings before Sartin and Hudson were elected to the Board. These statements were allegedly "republished ... on or after December 11, 2012 but before January 22, 2013 when Klune was terminated." *Id.*

### (a)    Tara

During her deposition, Tara could not recall any disparaging comments other than those by Sahlolbei about her alleged infidelity. Those statements were made privately. In her more recent declaration, Tara states that, after the publication of an article on December 28, 2012, "I was informed that Ms. Hudson also stated to several employees of the Hospital that, I, too, was aware of the arrangement [between Sahlolbei and Brad] all along, which is absolutely false." Tara Decl. ¶ 8. This does not constitute evidence of when Hudson actually made the statements to employees or of a corresponding temporal nexus to Tara's termination. Accordingly, the declaration fails to create a triable issue of material fact that Hudson or Sartin made statements regarding Tara's complicity in the kickback agreement or of self-dealing "in the course of termination." Nor has any evidence been presented to support the claim that statements were published regarding any "self-dealing" by Tara.

### (b)    Rutherford

During his deposition, Rutherford could not recall any specific disparaging statements made by Sartin or Hudson, or when such statements were made. In his more recent declaration, Rutherford states that, during a meeting with Sartin, Hudson, and Sahlolbei "one or two days before his termination," the three accused Rutherford of "having been aware of the secret kickback arrangement between Dr. Sahlolbei and Dr. Brad Barth all along." Rutherford Decl., Dkt. 367-4 ¶ 15-16. "They told me they had spoken to other employees about the same accusations." *Id.* ¶ 16.

This evidence is insufficient to raise a genuine issue of material fact as to whether these statements were made to other employees in the course of Rutherford's termination. There is no evidence of when the statements to other employees were made. Therefore, there is no evidence as to the temporal nexus, if any, between the statements and the non-renewal of Rutherford's employment agreement. As noted, Sahlolbei's presence in the private meeting did not transform any statements that were made into a "public disclosure" that would warrant the right to hearing at which Rutherford could address any negative statements about him. Moreover, as noted above, qualified immunity would apply to such statements. Finally, no evidence has been presented to support the claim that any statements were published regarding any "self-dealing" by Rutherford.[8]

---

[8] Given these conclusions, Defendants' argument that because Rutherford was able to find employment near his home after the nonrenewal of his contract, his freedom to work was not infringed, is not addressed.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

(c)　　Klune

(i)　　Hudson's Declaration

With respect to claims that stigmatizing statements were published in connection with Klune's termination, he relies on a declaration signed by Hudson on November 19, 2012. In the declaration, she states that she has "reviewed the civil complaint filed against Hossain Sahlolbei M.D. and Pars Surgery, Inc. by PVHD on October 16, 2012." Dkt. 367, Ex. 76 at 26, ¶ 2. Hudson then states that she was a Board member in 2009 and that, in connection with recruiting Brad, she participated in meetings with Klune and others. *Id.* ¶ 3. She states that during these meetings it was determined that Brad would have a contract with Sahlolbei rather than Palo Verde because Brad had more confidence that Sahlolbei would pay him. *Id.* ¶ 5. She also stated

> However, Mr. Klune subsequently notified Mr. Carney, Dr. Sahlolbei and myself that he preferred that [Palo Verde] contract directly with [Brad], rather than having [Brad] contract with Pars Surgery. Dr. Sahlolbei informed us that [Brad] had already started his relocation to Blythe with an agreement with Pars Surgery/Dr. Sahlolbei, as [Palo Verde] had planned originally. Dr. Sahlolbei told Mr. Klune, Mr. Carney and me during our meetings that Pars Surgery would still have a separate contract with [Brad], in order to provide back-up and coverage, notwithstanding that [Palo Verde] would be contracting with [Brad]. It was agreed amongst us that [Brad] could have a separate contract with Pars Surgery because [Brad] did not trust [Palo Verde] to continue its contract with him on a long-term basis and to continue paying him. To my knowledge, no objections were made to Pars Surgery having a separate contract with [Brad], and no one questioned what the terms of that contract would be.

*Id.* ¶ 6.

Whether the language in this declaration creates a triable issue as to a stigmatizing statement, starts with a consideration whether the declaration was made "under color of state law." Hudson signed the declaration after she was elected to the Board, but before she assumed office. The "under color of state law" requirement is closely related to the state-action requirement of the Fourteenth Amendment. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997); *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) ("In a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical."). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38, (1982) (quoting *Lugar*, 457 U.S. at 937).

Generally, a public employee acting in his official capacity or exercising his responsibilities pursuant to state law is deemed to be acting under color of state law. *West v. Atkins*, 487 U.S. 42, 50 (1988). The traditional definition requires that the employee "have exercised power 'possessed by virtue of state law

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). However, no "rigid formula" exists to determine if a state or local official is acting under color of state law. Rather, an inquiry is made into the nature and circumstances of the official's conduct and its relationship to his official duties. *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.1995)).The Ninth Circuit has not specifically addressed whether officials who have been elected, but who have not yet assumed office are state actors.

The Seventh Circuit has considered the amount of actual authority of an "official-elect" to assess whether conduct was performed under color of state law. In *Burrell v. City of Mattoon*, 378 F.3d 642, 649–50 (7th Cir. 2004), a city clerk who abandoned his position a day before his employment term expired alleged due process violations because the mayor-elect and incoming city council notified him that they would not reappoint him when they took office the next day. *Burrell* held that the mayor-elect and incoming city council, who were duly elected but not yet inaugurated as required by local law, were not state actors because they had no power or authority to terminate the clerk's employment when they made the statements. *Id.*

In *International Association of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 624 (D.S.C. 2011) *aff'd*, 482 F. App'x 759 (4th Cir. 2012), statements were made by the Governor-elect of South Carolina regarding her appointment of the Director of Labor, Licensing and Regulation, who would be a "partner" to help her "fight the unions." The court determined that these statements were made under color of state law because the governor-elect was, in effect, a state official based on her actual authority to form and oversee a transition team, a process funded by the state. Moreover, her announcement led the agency to post a release about it on its website. This demonstrated the state supported and accepted her actions and regarded her as state actor. *Id.* at 625.

Applying these principles to the present case, Hudson's declaration discusses events that occurred while she was acting under color of state law as a previous Board member. When coupled to the fact that she was about to resume a position as a Board member, it is reasonable to conclude that her statements in the declaration were made "under color of state law."

The next issue is whether the statements made in a declaration filed in a civil lawsuit is a sufficient "public" statement for purposes of determining whether the subject of the statements should have a right to a public hearing to address any negative comments. Placing stigmatizing information in a personnel file, which is available to the public, constitutes publication sufficient to trigger a liberty interest under the Fourteenth Amendment. *Cox*, 359 F.3d at 1112 ("absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record"). For similar reasons, Hudson's declaration may be deemed a "publication," because it was filed in a judicial proceeding and was, therefore, available to the public.

Turning to the substance of the declaration, it states that Klune was aware that Sahlolbei and Brad had a separate contract. It also states that, to the best of Hudson's knowledge, Klune did not object to the

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

contract, but only stated that he preferred that Brad contract directly with Palo Verde. This statement is not evidence that Hudson accused Klune of being complicit in the Kickback Agreement. Rather, Hudson stated why the Board and Klune did not object to the agreement between Sahlolbei and Brad, and that the separate agreement was appropriate. This is not a "stigmatizing" statement about Klune.

Once again, even if the statement were deemed "stigmatizing," Hudson would have qualified immunity. It was not "clearly established" at the time Hudson executed the declaration that statements she made while an official-elect, but prior to taking office, could be actionable stigmatizing statements.

(ii)     News Article

Klune also relies on a December 28, 2012 article that appeared in the Palo Verde Valley Times. It discusses a lawsuit filed by Sahlolbei against Palo Verde and various board members. Dkt. 367, Ex. 69. The article states that Palo Verde had brought an action against Sahlolbei in which it alleged fraud, and that he responded with his own action. The article states,

> The fraud lawsuit [brought by Palo Verde] accuses Sahlolbei of having a contract with the hospital's anesthesiologist separate from the anesthesiologist's contract with the hospital. [¶] "The allegations of [Palo Verde's] complaint are completely baseless and unproven," [Sahlolbei's] suit states, claiming that former board members Sandy Hudson, who won back a seat in November, and former board member Francisco Tejeda, M.D., have testified that Carney and Klune had direct contact with [Brad] concerning the negotiations and knew that Sahlolbei and [Brad] would have their own contract.

*Id.*

There is no evidence that Defendants caused the publication of this article. Accordingly, it is not a statement by a government official. Moreover, the article does not contain a "stigmatizing" statement about Klune.

(iii)     Rutherford and Tara Declarations

Plaintiffs argue that the Rutherford and Tara declarations show that stigmatizing statements about Klune were made prior to his termination. However, the declarations only refer to statements made about Rutherford and Tara.

For all of these reasons, Klune has failed to show a triable issue of fact as to whether any stigmatizing statements were made by Defendants in the course of his termination.[9] Accordingly, summary judgment

---

[9] In the Opposition, Plaintiffs argue that on December 11, 2012, "Sartin and Hudson placed on the Board's agenda alleged public and employee complaints against Klune, Rutherford, and Barth, and instigated a discussion of these alleged complaints during the open sessions of the meeting." Dkt. 367 at 27. They contend that Burton then sought to have the discussion tabled. Plaintiffs cite no evidence to support this argument either in their brief or in their Statement of Genuine Disputes of Material Fact regarding "Triable Issue No. 4: In connection with their terminations

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

is GRANTED as to Klune's § 1983 claim.

*       *       *

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' § 1983 cause of action.

> 2. <u>Federal False Claims Act (31 U.S.C. § 3730(h)) and California False Claims Act (Cal. Gov. Code § 12653) Claims</u>

The Federal False Claims Act (the "FCA") and the substantially similar Cal. Gov. Code § 12653 (the "CFCA") provide:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

To establish a claim under § 3730(h)(1) or § 12653, a plaintiff must prove that he or she: (i) was engaging in protected activity; (ii) the employer knew that the employee was doing so; and (iii) the employer discriminated against the employee for engaging in such protected activity. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996); *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 445-46 (2013).

---

Plaintiffs were accused of conduct that gives rise to due process rights." Dkt. 380 at 39-40.

The Board minutes from December 11, 2012, reflect that "Sartin call[ed] for public comment and employee complaints regarding the Administration Executive team" as to the CEO, CFO, CNO, and HR. Roberts Decl., Dkt. 365-9, Ex. 11 at 6. This would include Klune, Rutherford, and Tara. The "Discussion" section of the meeting minutes also states that

> Mr. Patterson further notes that the public has the right to voice their concerns; however, the Board is facilitating such a forum which may present personal liability for the Board members. [¶] Discussion ensues among the Board, the public and General Legal Counsel. [¶] President Sartin references several complaints that have been received in writing that need to be addressed.

*Id.* The "Action" section of the meeting minutes states, "Secretary Burton motions to table item 10. Public and employee complaints regarding Administration Executive team to the next meeting. Vice President McLain seconds. Motion carries unanimously." *Id.* This evidence does not create a genuine issue of material fact as to whether stigmatizing statements were made in connection with the termination of any of the Plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|-------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

Although a plaintiff need not be aware of the FCA while engaged in a protected activity, "the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). *Moore* also explained that "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Id.* "[A] violation of a law or regulation standing alone is not proof of a false claim." *Hopper*, 91 F.3d at 1270. False claims are actions with the "purpose and effect of causing the United States to pay out money it is not obligated to pay, or those actions which intentionally deprive the United States of money it is lawfully due." *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 459 (2013).

    a)  Engagement in a "Protected Activity"

    (1)  <u>Patient Transfers and the "Upcoding" Activity</u>

Plaintiffs contend that their investigation of the "upcoding activity" constituted a protected activity because upcoding violated the FCA. As noted in the prior Order, this claim is based on a "false certification" theory:

> A false certification can create liability under the FCA when it is a prerequisite to obtaining payment from Medicare. *See Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 996 (9th Cir. 2010). Plaintiffs specifically allege that the payment of ambulance services is made pursuant to Medicare Part B, and that the government is only obligated to pay a Medicare claim if a physician certifies that such services are medically required.  Dkt. 188 ¶ 143(a)(iv); 42 U.S.C. §§1395n(a)(2)(B); *see American Ambulance Service of Pa. v. Sullivan*, 761 F. Supp. 1211 (E.D. Pa. 1991) (explaining the Medicare provisions related to ambulance services). Plaintiffs further allege that in order to receive payment from Medicare, a provider must submit a Form CMS-1450, which requires an express certification that the request for payment is correct and complete. Dkt. 188 ¶ 143(a)(vi).[10]
>
> Express certification means that the entity seeking payment assures compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted. Implied false certification occurs when an entity previously has undertaken to comply with a law, rule, or regulation, and then submits a claim for payment for which a certification of compliance is not required. Under both theories, "[i]t is the false *certification* of compliance which creates liability [under the FCA] when certification is a prerequisite to obtaining a government benefit."  *Lungwitz*, 616 F.3d at 998 (citing *Anton,* 91 F.3d at 1266).

Dkt. 321 at 14.

---

[10]  Defendants argue that this form does not concern patient transport. Even without the allegation in ¶ 143(a)(vi), the TAC still alleges protected activity because conduct under Part B of the Medicare Act requires a physician to certify that an ambulance service was medically necessary.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

Defendants contend that the upcoding activity cannot be a "protected activity" because Plaintiff's employer, Palo Verde, was not submitting the false claims to the government. Rather, Sartin's company, Desert Air, submitted the Medicare claims for reimbursement of the fixed-wing transports that were not medically necessary. Accordingly, they contend that Palo Verde could not have itself defrauded the government. From this they contend that Plaintiffs were not investigating a false claim made by their "employer."

In the prior Order, the Court addressed this argument:

> This argument is unpersuasive. Sahlolbei is a physician who is employed by Hospital, which in turn, is operated by Palo Verde. Dkt. 188 ¶ 13, 47. Just as conduct by any employer-entity must be undertaken by one or more of its employees, any fraudulent conduct by Palo Verde, which was Plaintiffs' "employer," would have to be undertaken by its employees. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) is instructive on this issue. There, the plaintiff was a nurse at a medical center. She investigated the conduct of doctors who also worked there. The investigation focused on fraudulent attempts by the doctors to inflate Medicare reimbursements. This was deemed sufficient to state a claim based on the investigation as a protected activity. 521 F.3d at 1104.

*Id.* at 14.

Defendants now contend that Sahlolbei was not an employee of Palo Verde. They submit his employment agreement with Palo Verde. It suggests that he was an independent contractor. Dkt. 358, Ex. 21. Defendants also argue that *Mendiondo* is distinguishable by renewing their argument that the employer medical center submitted the falsified Medicare claims to the government.

"The FCA reaches 'any person who knowingly *assisted in* causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.' [citation omitted]. Thus, a person need not be the one who actually submitted the claim forms in order to be liable." *United States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-45 (1943)) (emphasis added by *Mackby*). In *Mackby*, the defendant argued that he was not liable under the FCA for submitting a false claim because his office manager did so. The Ninth Circuit rejected this argument. By telling the officer manager how to submit the bill, the defendant "caused the claims to be submitted with false information." *Id.* at 828.

Similarly, "FCA liability attaches to a false statement that has a 'material effect' on the Government's eventual decision to pay a claim." *United States v. Eghbal*, 548 F.3d 1281, 1283 (9th Cir. 2008) (citing *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008)). In *Eghbal*, fraudulent certifications were made by defendants that they had not provided down payments for home purchasers, in order to procure Department of Housing and Urban Development's ("HUD") insurance for mortgage-secured loans. After the purchasers defaulted, the insureds made claims to HUD, to which the defendants were not parties.

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |


Because the defendants' false statements induced the government to provide the insurance, they were actionable under the FCA. *Id.* at 1283-1284.

In *Allison Engine Co.*, the Supreme Court explained that

> What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government." Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim

553 U.S. at 671. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 378 (5th Cir. 2004) is also instructive. There, physician defendants argued that they could not be liable under the FCA for any false claims submitted to Medicare for services that were medically unnecessary "because such costs are billed by the hospital, not the physicians." *Id.* The Fifth Circuit rejected this argument. It found that allegations that the "defendants assisted one another and cooperated in a scheme or pattern of billing for and covering up these allegedly false-claim items" sufficient to assert a violation of the FCA against the physician defendants.

Sartin became a Board member of Palo Verde in December 2012. This was while Plaintiffs' investigation was ongoing. Sartin's company was submitting the allegedly false claims to the government. Plaintiffs contend that Sartin influenced Palo Verde to continue the certification of transports that were not medically necessary by discouraging the adoption and implementation of the new patient transfer policy. This new policy prohibited the false certifications. It was the Palo Verde Board that voted on whether to terminate Klune and to renew the employment agreements of Rutherford and Tara. Taken together, these are sufficient bases for the FCA claim.

It is also significant that a plaintiff in an FCA retaliation claim need only show that the employer was "possibly committing fraud against the government." *See U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998) ("§ 3730 (h) expressly includes 'investigation for ... an action filed or to be filed' within its protective cover. This manifests Congress' intent to protect employees while they are collecting information about a possible fraud, *before* they have put all the pieces of the puzzle together.") (emphasis in original). Plaintiffs need only have subjectively believed that an FCA violation was occurring, and a reasonable person in their position need also have believed that. *See Moore*, 275 F.3d at 845 ("an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." ).

Plaintiffs have presented facts from which a jury could conclude that these standards have been met. Plaintiffs have presented evidence that a healthcare attorney advised Palo Verde in May 2012 that there was "potential risk" that the Hospital would be liable under the False Claims Act based on the patient transfers that were occurring that were not medically necessary. Waltz Memo, Dkt. 384 Ex. 12. That

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

memorandum provides

> While we understand that the Hospital is not submitting claims with respect to these services, it should be noted that the False Claims Act allows liability for both the entity which submits the false claim and any entity which *causes* the submission of a false claim. Thus, if any documentation supplied by the Hospital to the ambulance company was false or materially deficient, resulting in the knowing submission of a false claim by the ambulance company, there is some potential risk to the Hospital as well.

*Id.* at 8 (emphasis in original).

The report provided by the consultant who reviewed the six patient transfers also suggested that the Hospital could be in violation of Medicare. Dkt. 384, Ex. 24-25. This is evidence from which a jury could reasonably conclude that the Plaintiffs reasonably believed, and a reasonable employee in Plaintiffs' position would have believed, that the Hospital was "possibly committing fraud against the government" through the patient transfer activity that was occurring at the Hospital.

(2)   <u>The Kickback Agreement</u>

Defendants next renew their argument that the Kickback Agreement is not a violation of the Stark Act because there was no referral scheme as required. Although the FAC mentions the Stark Act in paragraph 87, it is not the basis for their claims. Rather, Plaintiffs added paragraph 88 to the FAC upon amendment, which alleges that the Kickback Agreement violated 42 U.S.C. § 1320a-7b(b)(1)(B) of the Anti-Kickback Act. Plaintiffs specifically allege that this provision does not require a referral scheme like the Stark Act.

42 U.S.C. § 1320a-7b(b)(1)(B) provides:

> (b) Illegal remunerations
>
> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>
> > ... (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

Plaintiffs allege in the FAC that Sahlolbei violated this provision because he "'arranged for' and 'recommended' to [Palo Verde] to enter into an agreement with [Brad] for [Palo Verde] to purchase anesthesia 'services' that Dr. Sahlolbei knew were to be paid, in whole or in part, by Federal health care

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

programs including Medicare." FAC, Dkt. 335 ¶ 88. Although this raises the same issues discussed above as to the person who committed the alleged violation, as discussed above, what is relevant is whether Plaintiffs reasonably believed that their employer was "possibly committing fraud against the government," and that an employee in their position would have also reasonably believed this. This standard has been met for purposes of the present motions.

Defendants also contend that the Kickback Agreement did not violate the Anti-Kickback statute because Sahlolbei was not receiving any actionable remuneration. Rather, Sahlolbei was providing back-up services for Brad. Thus, Defendants contend that under the Kickback Agreement, Sahlolbei was required to make arrangements and pay for backup anesthesiology services were Brad unavailable. However, the terms of the Kickback Agreement state that Brad was responsible for arranging and paying for backup services. Dkt. 384-7, Ex. 1 at 95-109. Indeed, Brad testified that, under the terms of his contract with Sahlolbei, he was to pay for backup coverage. RJN, Dkt. 385-55, Ex. O at 6. Brad also testified that Sahlolbei later "insisted to pay" because "it was going to be his responsibility to pick the providers and to pay for them." *Id.* Accordingly, some evidence has been presented that the Kickback Agreement was modified to require Sahlolbei to arrange for and compensate those who provided coverage for Brad. However, no evidence has been presented that Klune or Rutherford knew about this oral modification when they were investigating the Kickback Agreement.

Plaintiffs submit evidence that in October 2012, Christensen, an attorney hired by the Hospital, wrote a memorandum that advised Palo Verde about the legality of the Kickback Agreement between Brad and Pars Surgery. Dkt. 381, Ex. 1 at 38-58. The memorandum concluded that the separate agreement "is likely an illegal kickback agreement under both Federal and State law." *Id.* at 44. It also stated that "[a]ssuming the Hospital was completely unaware" of the agreement, "then the Hospital may not be liable." It then discusses that there are some facts that could provide the basis for liability of the Hospital. It also states that "[i]f the Hospital confirms that its overpayments to Anesthesiologist resulted in overpayments from the Medi-Cal program, or from any other federally funded program, the Hospital will be obligated to report and return the overpayment within 60 days." *Id.*

This evidence is sufficient to show that there is a triable issue of fact as to whether the Plaintiffs reasonably believed that the Hospital was committing fraud against the government through the Kickback Agreement.

Defendants next renew the argument that, as a matter of law, the fixed compensation paid by Palo Verde to Brad is not subject to Medicare reimbursement. They point to the cost reports submitted by Palo Verde to Medicare. They suggest that Palo Verde did not bill for salaries paid to those who provided anesthesiology services. Dkt. 358, Ex. 20. These reports were completed by Rutherford. Rutherford Depo., Dkt. 358, Ex. 3 at 27-28. They contend that any claims submitted by Palo Verde to Medicare for anesthesiology services to patients were billed and reimbursed at Medicare-approved rates, and were unrelated to any compensation provided to Brad. Accordingly, Palo Verde did not submit a false claim to the government for Brad's services.

This argument was considered and rejected in the prior Order:

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

Even assuming that Medicare did not reimburse Palo Verde for Brad's salary, it did provide payments for the anesthesiology services that he provided. The TAC suggests that Palo Verde used these revenues to pay Brad's fixed salary. *See* Dkt. 188 ¶ 143 (b)(vi). Although this may not have imposed a net, additional cost on the government, to state a claim it is sufficient to allege that money "appropriated for legitimate purposes [is] instead wasted on a false claim." *Howard Univ.,* 153 F.3d at 739.

There, an employee was investigating fraud committed against its employer, Howard University. The university received 80% of its funding from the federal government. The court found that "[w]hether or not the United States Government would be out *additional* money beyond that already appropriated for Howard, it would suffer a loss if the money appropriated for legitimate purposes were instead wasted on a false claim." *Id.* (emphasis in original). Because Howard received 80% of its funds from the federal government, "the likelihood is high that the government would suffer this kind of loss if Howard were to pay a false claim." *Id.* The court noted that it was clear that Congress "intended the concept of loss to the United States to be considered broadly." *Id.*

The result is similar here. Plaintiffs allege that Palo Verde uses the money received from Medicare for anesthesiology services to pay Brad's salary. If a portion of that salary were used as part of a fraudulent kickback scheme, then money appropriated from the federal government for legitimate purposes was instead wasted. Plaintiffs need only reasonably have believed that Palo Verde was "possibly committing fraud against the government, and [that they] investigated the possible fraud." *Mendiondo*, 521 F.3d 1097. Therefore, the TAC is sufficient if it alleges that Plaintiffs reasonably believed the Kickback Agreement constituted Medicare fraud.

Dkt. 325 at 17.

A similar analysis applies here. The precise percentage of Palo Verde's funding that is provided by Medicare has not been presented. But evidence has been presented that Palo Verde receives at least some portion of its funding from Medicare reimbursements, including those for anesthesiology services. A genuine issue of fact has been presented as to whether Brad's solicitation of money from Palo Verde and subsequent payments to Sahlolbei was a false claim because Palo Verde received money from Medicare for the anesthesiology services that Brad provided. The standard for an FCA retaliation claim is the investigation of activity in which the employer was "possibly" committing fraud against the government.

Defendants also repeat their previous argument about Plaintiffs' assertion that Palo Verde would not have paid the fixed compensation to Brad had it known of the Kickback Agreement. As noted in the prior Order, "Plaintiffs do not allege that Palo Verde could have paid less for Brad's services. Instead they allege that Palo Verde would not knowingly have made payments to Brad that were derived from illegal conduct." Dkt. 325 at 16. This argument continues to lack merit.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|-------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

(3)　　Tara's Protected Activity

Defendants contend that Tara did not engage in any protected activity because she did not conduct any investigations. At her deposition, Tara testified that she "at no time, investigated any member of the board." Tara Depo., Dkt. 358-8, Ex. 5 at 6-7. She later testified that, "I didn't report or investigate anyone." *Id.* at 8.

Plaintiffs have not presented evidence that Tara participated in an investigation with respect to any of the actions that form the basis for the retaliation claims. However, she was interviewed by the investigator for the Riverside District Attorney. Tara Decl. ¶ 9. Plaintiffs do not contend that Tara provided any of the initial information that was reported to government authorities or was in any way involved with investigating the patient transfer conduct or the Kickback Agreement. Therefore, her interview shows no more than compliance with the third-party investigation. Indeed, at the hearing, Plaintiffs' counsel conceded that the investigator initiated the process that led to the interview. Nor has Tara presented any evidence that the Board members knew that she had spoken with the office of the District Attorney. Without such evidence there is no basis for her retaliation claim.

Tara has declared that "[a]fter the Hospital implemented an EMTALA-complaint patient transfer policy in the summer of 2012, the hostile work environment complaints regarding Dr. Sahlolbei increased dramatically. I provided information regarding Dr. Sahlolbei's hostile and abusive behavior to CEO, Peter Klune, as well as to the Board." Tara Decl., Dkt. 367-3, ¶ 4. Plaintiffs argued at the hearing that reporting these complaints is evidence of participation in a protected activity. This position is not persuasive. She was not reporting any alleged violations of the FCA.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Tara's retaliation claims that are premised on the FCA and CFCA.

The outcome is different as to Klune and Rutherford. There is sufficient evidence to show a triable issue of fact as to the claim that each engaged in a protected activity. This includes evidence as to their contacts with attorneys who in turn drafted memoranda that were provided to the United States Attorney's Office, the OIG, and the Riverside District Attorney.

b)　　Retaliation

Plaintiffs must also demonstrate that "the employer discriminated against the employee for engaging in such protected activity." *Anton*, 91 F.3d at 1269. Defendants contend that the *McDonnell-Douglas* burden-shifting analysis applies to FCA retaliation claims.[11] They rely on *Sears v. Hous. Auth. of the*

---

[11] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a process for considering employment retaliation claims. The plaintiff has the initial burden of establishing a prima facie case of retaliation. *Id.* at 802. This burden can be met through evidence that "1) he engaged in a protected activity; 2) he suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

*Cnty. of Monterey*, 2014 WL 1369594 (N.D. Cal. Apr. 7, 2014). *Sears* applied the *McDonnell-Douglas* burden shifting analysis to an FCA retaliation claim, but noted that

> The Ninth Circuit has not expressly determined whether the *McDonnell–Douglas* burden-shifting analysis utilized by the courts in analyzing retaliation claims under Title VII of the Civil Rights Act also applies to whistleblowing claims under the FCA. *See McDonnell–Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, many other courts have extended the *McDonnell–Douglas* framework to FCA retaliation claims. *See Harrington v. Aggregate Indus. Ne. Region, Inc.,* 668 F.3d 25, 30–31 (1st Cir.2012) (collecting cases); *see also U.S. ex rel. Berglund v. Boeing Co.,* 835 F.Supp.2d 1020, 1040 (D.Or.2011); *Neighorn v. Quest Health Care,* 870 F.Supp.2d 1069, 1092 (D.Or.2012). Moreover, in other contexts, the Ninth Circuit has imported Title VII doctrine to the FCA retaliation context. *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.,* 275 F.3d 838, 847–48 (9th Cir.2002) (conduct does not constitute "retaliation" under the FCA unless it would be sufficient to constitute an adverse employment action under Title VII).

*Id.* at *7.

Plaintiffs have not disputed that this approach is appropriate here. Because it makes sense to apply the doctrine in light of the obvious parallel between the similar retaliation claims, the Court does so.

(1)    <u>Prima Facie Case</u>

As noted, to establish a prima facie case of retaliation, Plaintiffs must show (1) they engaged in protected activity; (2) they suffered a materially adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action. *See Pardi v. Kaiser Found. Hosp.,* 389 F.3d 840, 849 (9th Cir. 2004). The first element has been addressed.

---

adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). If he meets this standard, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this standard, the burden shifts back to the plaintiff to produce evidence that the proffered reason is a pretext. *Id.* "[T]he plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1126 (9th Cir. 2009) (internal quotations omitted). "To avoid summary judgment at this step, however, the plaintiff must only demonstrate that there is a genuine dispute of material fact regarding pretext." *Id.* "The difference between the first and third steps of the *McDonnell Douglas* framework is not without some consequence. Among other things, a plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). To demonstrate a genuine dispute of material fact regarding pretext, using circumstantial evidence, Plaintiff must provide "specific and substantial [evidence] in order to create a triable issue with respect to whether the employer intended to [retaliate]." *Blue v. Widnall*, 162 F.3d 541, 546 (9th Cir. 1998) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

With respect to the second element, Klune was terminated. This was an adverse employment action. Rutherford's employment agreement was not renewed. This was also an adverse employment action.[12]

To establish a causal connection between the protected activity and the adverse action, Plaintiffs must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [the] [adverse employment decision] and that but for such activity" the adverse decisions would not have occurred. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002); *see also Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) ("At the summary judgment stage, the requisite degree of proof necessary to establish a prima facie case ... is minimal and does not even need to rise to the level of a preponderance of the evidence.") (internal quotation marks omitted). A causal connection may be inferred either from temporal proximity between the protected activity and the adverse action or from "evidence of surrounding circumstances that show a retaliatory motive." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), *as amended* (Jan. 2, 2004).

Rutherford and Klune each has made a prima facie showing of a causal connection. Each has presented evidence that, during October and November 2012, he participated in the investigation of the patient transfer policy and the Kickback Agreement, and the reporting of this information to government authorities. Each was an author of the Trask Memo, which provided details regarding these activities, the patient transfer policy and related matters. Rutherford was interviewed by investigators in December 2012 and Klune in January 2013. Klune was terminated on January 22, 2013. Rutherford's employment agreement was not renewed on February 22, 2013. This is sufficient evidence of "surrounding circumstances that show a retaliatory motive." The temporal proximity is sufficient to establish a prima facie case. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 919 (9th Cir. 1996) (layoff occurring four months after supervisor asked plaintiff to drop his discrimination complaint and one month after plaintiff filed his second complaint was "sufficient evidence to create an inference of a 'causal link'" based on temporal proximity*); Johnson v. Alameda-Contra Costa Transit Dist.,* No. C-04-4879 MMC, 2006 WL 2587293, at *7 (N.D. Cal. Sept. 8, 2006) (grievances filed by plaintiff three and four months before

---

[12] The Ninth Circuit has not specifically addressed this issue. However, other circuit courts have determined that a non-renewal of an employment arrangement is an adverse action. *Leibowitz v. Cornell University*, 584 F.3d 487 (2d Cir. 2009) ("a non-renewal of an employment contract itself is an adverse employment action"); *see also Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VI"); *Carter v. University of Toledo*, 349 F.3d 269, 270-71 (6th Cir. 2003) (reversing district court's grant of summary judgment in employer's favor on plaintiff's race discrimination claim under Title VII in connection with employer's failure to renew her contract as a visiting professor); *Minshall v. McGraw Hill Broadcasting Co., Inc.*, 323 F.3d 1273, 1279-82 (10th Cir. 2003) (sufficient evidence that employer unlawfully discriminated against employee based on age in deciding not to renew his contract); *Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618, (7th Cir. 2002) (where teacher challenged non-renewal of contract "[i]t is undisputed … that [plaintiff] suffered an adverse employment action"); *Kassaye v. Bryant College*, 999 F.2d 603, 607 (1st Cir. 1993) ("act of refusing to renew appellant's employment at Bryant College" may provide grounds for discrimination claim).

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

plaintiff's termination sufficient to draw "inference of retaliation").

(2)     <u>Non-Retaliatory Reasons for the Adverse Employment Decisions</u>

To meet their burden to show legitimate, non-retaliatory reasons for the adverse employment actions, Defendants "must clearly set forth, through the introduction of admissible evidence, reasons for [Palo Verde's] employment decision which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful [retaliation]." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169 (9th Cir. 2007) (internal quotation marks omitted) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

Defendants have presented such evidence. This includes evidence that Rutherford's employment agreement was not renewed because there were substantial concerns about the financial condition of Palo Verde and Rutherford was compensated at a high level. This evidence includes the financial report Rutherford presented to Board at its meeting on January 16, 2013. It showed that in 2012, Palo Verde had lost millions of dollars, its revenues were decreasing, its costs were increasing, and that it would run out of funds within six months. Dkt. 358, Ex. 8. Rutherford's annual salary was $224,000 when he began in 2011 and that he received a 6% pay increase in 2012. Rutherford Depo., Dkt. 358, Ex. 3 at 37-40. Burton, a board member who voted not to renew Rutherford's agreement, declares that he did so because Rutherford's "pay was [] very high and I didn't not think the hospital could continue to pay it and stay open. He also did not have a plan to save the hospital, which was the first priority." Declaration of Samuel Burton (Burton Decl."), Dkt. 358 ¶ 4.

Similarly, Hudson declares that she "lost confidence in Mr. Rutherford once he became interim CEO, because he seemed at a loss as to how to turn things around and the only proposed solution I recall him making after becoming CEO was to hire a bankruptcy attorney. ... I personally voted against renewing his contract, because I just did not think Mr. Rutherford had what it took to lead [Palo Verde] or help it overcome its financial problems. His cost to the District was also high and could not be justified considering his role in overseeing the demise of the finances of the hospital and his failure to take steps sooner to try to save the hospital." Hudson Decl., Dkt,. 358 ¶ 7. Sartin states substantially similar reasons for her decision to vote in favor of terminating Klune. Sartin Decl., Dkt. 358 ¶ 4.

Rutherford's financial report presented to the Board on January 16, 2013 states that Klune's salary was $477,000 per year. Dkt. 358, Ex. 8. Burton declares that he voted to terminate Klune's contract "because of the bad financial condition the hospital was in under his management, and also because he did not have a plan to fix the problem and his compensation was not sustainable." Burton Decl., Dkt. 358 ¶ 3. Hudson declares that she voted in favor of terminating Klune "because the District could not afford to continue to pay what was costing a total of $500,000/year given its financial problems. I had also lost confidence in Mr. Klune who had not taken any real measures to address the financial problems that had obviously existed for some time before January 2013. He seemed indifferent to these problems ...." Hudson Decl., Dkt. 358 ¶ 6. Sartin states substantially similar reasons for her decision to vote in favor of not renewing Rutherford's employment agreement. Sartin Decl., Dkt. 358 ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|-------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

This evidence is sufficient to satisfy Defendants' burden of presenting non-retaliatory reasons for Klune's termination and the non-renewal of Rutherford's contract.

### (3)    Pretext

"At the third step of the *McDonnell Douglas* scheme, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1126 (9th Cir. 2009) (internal quotations omitted). "To avoid summary judgment at this step, however, the plaintiff must only demonstrate that there is a genuine dispute of material fact regarding pretext." *Id.* "The difference between the first and third steps of the *McDonnell Douglas* framework is not without some consequence. Among other things, a plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). "'[W]eaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffer' can give rise to an inference of pretext, as well as deviations from standard procedures and close temporal proximity between the employee's termination and employee's whistleblowing." *Sears*, 2014 WL 1369594, at * 10 (quoting *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 33 (1st Cir. 2012)).

To show that there is a genuine issue of material fact regarding pretext, using circumstantial evidence, Plaintiff must provide "specific and substantial [evidence] in order to create a triable issue with respect to whether the employer intended to discriminate." *Blue v. Widnall*, 162 F.3d 541, 546 (9th Cir. 1998) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

Rutherford and Klune argue that Sartin and Hudson were motivated to terminate them because the two had reported the potential conflict of interests of Sartin and Hudson. They add that Sartin and Hudson were also motivated to preserve the profits that would result from the challenged patient transfer policy. They argue that the close proximity between the protected activity and the adverse employment decisions also supports an inference of pretext.

Plaintiffs also present the deposition testimony of Board member Beatrice Pinon. She states that she was satisfied with Klune's performance, felt that he was doing a good job when he was terminated and did not think there was any reason to terminate him. Deposition of Beatrice Pinon ("Pinon Depo."), Dkt. 384, Ex. 66 at 57-58. She also testified that, during the meeting when others on the Board voted to terminate Klune, she was not provided specific information about why his performance was subpar. *Id.* at 59-60. The deposition testimony of Catalina McLain, another Board member, has also been presented. She testified that Klune received positive evaluations. Deposition of Catalina McLain ("McLain Depo."), Dkt. 384, Ex. 7 at 11. In her view, Klune performed well as CEO. *Id.* She voted against his termination. *Id.* She testified that she was "caught off guard" by Klune's termination, and that she "felt that there had been

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|-------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

prior meetings taking place." *Id.* at 12. She believed that the Board was "entering into that meeting" for the purpose of "giving an evaluation, not for termination. And it appeared to myself that Ms. Sartin, Ms. Hudson, and Mr. Burton all were aware that the purpose of that meeting was to terminate Mr. Klune." *Id.* She also testified that, "[t]here were not facts presented during that meeting, only reference that there were numerous things that Mr. Klune had done, but we were not given anything other than the fact [sic] Mr. Burton continually saying, 'I've got to do what I need to do to keep this hospital open.'" *Id.* at 14.

Plaintiffs also contend that Palo Verde faced significant financial challenges prior to Klune's tenure and that he was selected to try to address them. Klune declares that when he was hired in April 2009, the Hospital was "insolvent and about to miss payroll," was in disrepair, lacked qualified staff in numerous critical positions and faced the consequences of its violation of government regulations. Klune Decl. ¶ 43. He declares that within two years, the Hospital had "completed a financial turnaround" had "amassed $10 Million in the bank," had paid off $ 200,000 in loans, cleared outstanding government citations and remodeled facilities. *Id.* ¶ 44. He also declares that he presented various proposals at the January 16, 2013 meeting, including what would have been, in effect, the removal of Sahlolbei from the Hospital staff (*id.* ¶ 46) and the elimination of "most if not all of Desert Air's referrals from the Hospital." *Id.* ¶ 47.

Plaintiffs also rely on a portion of Hudson's deposition during which she was asked whether her vote to terminate Klune was motivated by a desire to provide financial benefit to Sahlolbei. Hudson asserted her Fifth Amendment privilege. Hudson Depo., Dkt. 384, Ex. 56 at 81. Plaintiffs contend that this supports a finding of a triable issue of fact because the trier of fact has discretion to draw a negative inference from this conduct. *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 911 (9th Cir. 2008) ("When a party asserts the privilege against self-incrimination in a civil case, the district court has discretion to draw an adverse inference from such assertion.").

This evidence is sufficient to demonstrate a genuine dispute of material fact regarding pretext as to Klune's termination.

With respect to Rutherford, Plaintiffs present evidence that on January 30, 2012, when Rutherford was the interim CEO, Bob Honaker, who was the Human Resources Officer of the Hospital, sent him a memorandum. In it Honaker expressed his concerns over the current work environment at the Hospital based on the abusive behavior of Sahlolbei. Dkt. 384, Ex. 43. Honaker recommended Board intervention and retention of an outside firm to evaluate the practices of the MEC. He also suggested that the Board take more responsibility in MEC matters. *Id.* Rutherford forwarded this memorandum to the District's General Counsel on February 7, 2013. Dkt. 384, Ex. 43; Rutherford Decl. ¶ 7. Plaintiffs contend that the General Counsel was under an ethical obligation to provide the memorandum to the Board. Rutherford also declares that at the December 11, 2012 Board meeting, Hudson asked the District's then General Counsel, Robert Patterson, "who turned us in to the DA?" Rutherford Decl. ¶ 8. Rutherford also declares that

> One or two days prior to my termination, I was summoned to a meeting by Ms. Sartin and Ms. Hudson. I was surprised to find that Dr. Sahlolbei was also in attendance. They interrogated me regarding various things and made it clear that they wanted to know

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

whether I would "play ball" and go along with their agenda of bringing an end to any further investigation into the illegalities that had been discovered and reported. I made it clear to them this was unacceptable to me.

Rutherford Decl. ¶ 15.

Collectively, this evidence is sufficient to show that there is a triable issue of fact as to pretext with respect to the non-renewal of Rutherford's employment agreement.

*   *   *

Because genuine issues of material fact have been presented as to pretext, Defendants' Motion for Summary Judgment as it relates to the FCA and CFCA retaliation claims asserted by Klune and Rutherford is DENIED.

### 3. Retaliation under California Labor Code § 1102.5(b)

Cal. Lab. Code § 1102.5(b) provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." "The elements of a section 1102.5(b) retaliation cause of action require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation." *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005). To establish a prima facie case for retaliation, "a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Id.*

"An employee engages in protected activity when she discloses to a governmental agency reasonably based suspicions of illegal activity." *Mokler v. Cnty. of Orange,* 157 Cal. App. 4th 121, 138 (2007) (internal quotation marks omitted). Thus, protected activity under § 1102.5(b) "is the disclosure of or opposition to a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199 (2012) (a complaint that relied solely on the plaintiff's reporting of violations of various city ordinances, rules, and manuals did not sufficiently state a claim under § 1102.5(b) because there was no alleged violation of state or federal regulations). The employee must "reasonably believe" that he or she was disclosing a violation of state or federal law. *Patten v. Grant Joint Union High Sch. Dist.,* 134 Cal. App. 4th 1378, 1384, 37 Cal. Rptr. 3d 113, 117 (2005).

Moreover, California courts have held that §1102.5(b) "protects employee reports of unlawful activity by third parties such as contactors and employees, as well [as] unlawful activity by an employer." *McVeigh v. Recology San Francisco*, 213 Cal.App.4th 443, 471 (2013).

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |


a)    FCA and CFCA Violations

The standards for a § 1102.5(b) claim parallel those that apply to a FCA retaliation claim. Accordingly, the same analysis outlined above applies as to the claims that are based on the investigation of potential violations of the FCA and CFCA.

b)    EMTALA Violations

Defendants contend that Plaintiffs have not presented evidence to show any investigation of actual violations of the EMTALA. In the FAC, Plaintiff allege that the patient transfer policy violated 42 U.S.C. § 1395dd(a)-(c) and 42 C.F.R. §§489.24(a)(1)-(e). FAC, Dkt. 335 ¶ 160(a)-(b). Defendants contend that the reports to the United States Attorney and the OIG do not assert a specific EMTALA violation. *See* Dkt. 358, Exs. 24-25.

The Trask Memo, which was provided to the Riverside District Attorney, addressed potential EMTALA violations. Dkt. 384,-7, Ex. 1. Defendants also contend that Plaintiffs "have no facts to support" that they investigated any violations of EMTALA. However, Plaintiffs have provided evidence that Palo Verde, through Klune, retained a healthcare attorney to evaluate the Hospital's patient transfer policy. Thus, the Waltz memorandum states that "the [patient transfer] policy at issue here would not suffice as the hospitals EMTALA policy, even if it addressed all EMTALA issues (which, as noted above, it does not), without the approval of the governing board of the hospital." Dkt. 384-9, Ex. 12 at 6. It further states that "[a]ccording to the complaints, apparently the policy as implemented has allowed [the primary care physician] control over transport decisions and resulted in inappropriately delayed care. If those allegations are true, and were called to the attention of [the Center for Medicare & Medicaid Services ("CMS")], we think that CMS/OIG would likely conclude that EMTALA had been violated." *Id.* at 7.

This evidence is sufficient to show a triable issue of fact as to whether Rutherford and Klune investigated conduct that they reasonably believed constituted violations of the EMTALA.

c)    California Government Code Violations

Plaintiffs contend that they were investigating whether certain defendants had conflicts of interests that constituted violations of Cal. Gov't Code § 1090 and the Political Reform Act, §§ 8100-91014. FAC. Dkt. 335 ¶ 160(e). Cal. Gov't Code § 1090 provides that a government official "shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

Plaintiffs have presented evidence that creates a triable issue of fact as to whether the investigation into the potential conflicts of Hudson and Sartin was a protected activity. Plaintiffs rely on a memorandum written by Best Best & Krieger for the Board on December 11, 2012. Dkt. 380-13, Ex. 37. It discusses the potential conflicts of interest of Hudson and Sartin due to their financial ties to Sahlolbei. The memorandum details how "[d]ecisions by Board members Hudson, Sartin, and Burton regarding Dr. Sahlolbei, whether directly or indirectly affected their financial interests, may constitute conflict of interest

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

violations of the Political Reform Act. If the prospective decisions, directly or indirectly involve a contract, there may be potential violations of Government Code Section 1090." *Id.* at 110.

In addition, the Trask Memo mentions that Hudson's husband owns a home where Sahlolbei resides. Dkt. 384-7, Ex. 1 at 5. It then states that Hudson approved two contracts between Sahlolbei and the Hospital when Hudson was a Board member. "We are researching whether these incidents involve violations of the Political [R]eform Act and Government Code Section 1090." *Id.* The Trask Memorandum also describes the investigation into "whether Dr. Sahlolbei is a source of income under the Political [R]eform Act to Ms. Sartin, but it seems likely." *Id.* Both Rutherford and Klune participated in writing the Trask Memo.

Collectively, this evidence is sufficient to show that there is a triable issue of fact as to these claims.[13]

> d) Whether Tara Was Engaged in a Protected Activity under Cal. Lab. Code § 1102.5(b)

Section 1102.5(b) has a broader scope than the FCA and CFCA. However, this does not save Tara's § 1102.5(b) claim. As noted, Tara has failed to present any evidence demonstrating a triable issue of fact that she was involved in the investigation or reporting at issue. As also noted, she has not presented any evidence that the Board members knew about her interview with the District Attorney's office.

Plaintiffs argued at the hearing that by reporting complaints about Sahlolbei to Klune a triable issue was created as to a claim under § 1102.5(b). Tara declares that she

> became aware of an alarming number of complaints against Dr. Sahlolbei from Hospital employees alleging abusive behavior and a hostile work environment. I also personally witnessed Dr. Sahlolbei's abusive conduct, and was personally subjected to it as well. After the Hospital implemented an EMTALA-complaint patient transfer policy in the summer of 2012, the hostile work environment complaints regarding Dr. Sahlolbei increased dramatically. I provided information regarding Dr. Sahlolbei's hostile and abusive behavior to CEO, Peter Klune, as well as to the Board.

Tara Decl., Dkt. 367-3, ¶ 4. Plaintiffs contend that Klune reported these complaints to the Board. For the reasons stated below, the new allegation as to investigating a hostile work environment is stricken from the FAC.

At the hearing, Plaintiffs cited *Diego v. Pilgrim United Church of Christ,* 231 Cal. App. 4th 913, 929 (2014) with respect to whether a claim could arise where someone is perceived as a whistleblower. *Diego* explained that the public policy underlying § 1102.5(b) is to encourage employees to notify government

---

[13] Plaintiffs also added two additional allegations to the FAC: hostile work environment created by Sahlolbei, *id.* ¶ 160(f); Sahlolbei's investigation of Cal. Pen. Code § 487(a) which criminalized "grand theft," *id.* ¶ 160(g). For the reasons discussed below, these allegations are stricken from the FAC.

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|--------------------------|------|----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

agencies when they have reason to believe that their employer is violating laws or regulations. It concluded that "[t]his policy applies to preclude retaliation by an employer not only against employees who actually notify the agency of the suspected violations but also against employees whom the employer suspects of such notifications." *Id.* Plaintiffs have presented no specific evidence that the Board had any reason to know that Tara had notified government agencies of the matters at issue. Therefore, there is no evidence from which a reasonable jury could conclude that Tara was "perceived" as a whistleblower by the Board.

*    *    *

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to Tara's § 1102.5(b) claim. Defendants' Motion for Summary Judgment is DENIED as to the § 1102.5(b) claims brought by Klune and Rutherford.

### 4. Klune's Breach of Contract Claim

Pursuant to Cal. Health & Safety Code § 32121(h), the provision under which Palo Verde was formed, "officers and employees shall hold their offices or positions at the pleasure of the board of directors." However, Cal. Health & Safety Code § 32121.5 provides, "[n]otwithstanding any other provision of this division, a local hospital district may enter into a contract of employment with a hospital administrator, the duration of which shall not exceed four years, but which may periodically be renewed upon expiration for not more than four years." Cal. Health & Safety Code § 32121.6 provides:

> If a health care district enters into a written employment agreement with a hospital administrator, including a hospital administrator who is designated as a chief executive officer, the written employment agreement shall include all material terms and conditions agreed to between the district and the hospital administrator regarding compensation, deferred compensation, retirement benefits, severance or continuing compensation after termination of the agreement, vacation pay and other paid time off for illness or personal reasons, and other employment benefits that differ from those available to other full-time employees.

"The standard elements of a claim for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. " *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (quoting (*Regan Roofing Co. v. Superior Court*, 24 Cal. App. 4th 425, 434–435 (1994)). "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract.*" Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." *Id.*

Klune and Palo Verde bring cross motions for partial summary judgment as to Klune's breach of contract claim. According to the terms of Klune's Employment Agreement, if Palo Verde terminates Klune's

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

employment at will, it must make a severance payment equal to 12 months of his compensation at the time of the termination. Employment Agreement § 5(b).. Dkt. 350, Ex. 1 at 4. Klune contends that because he was terminated without cause, he is entitled to the aforementioned severance payment.

a)       Whether Klune was Terminated For Cause or At Will

Palo Verde argues that Klune has failed to establish that he was terminated "at will" under the contract, *i.e.*, without cause. They argue that the severance requirement is triggered only if Klune shows, by a preponderance of the evidence, that there was no good cause for the termination.[14]

The Employment Agreement states that it is for a three-year term. However, it also provides that it can be terminated at an earlier date as follows: (i) by Palo Verde "for cause at any time" as set forth in Section 4(a); (ii) by Palo Verde "immediately" if Klune is terminated "for cause, based on serious misconduct," provided that a written statement explaining the grounds for termination is given before termination, as set forth in Section 4(b); (iii) by Klune "at will" so long as he provides 12 months' notice, as set forth in Section 5(a); or (iv) by Palo Verde "at will" so long as it pays the 12-month severance as set forth in Section 5(b). Dkt. 350, Ex. 1.

What this shows is that when Palo Verde terminates the agreement without cause under section5(b), no burden is shifted to Klune to establish that the termination was not for cause as it could have been under section 4(a) or (b). Palo Verde's contrary interpretation makes no sense because it would effectively permit the shifting of the burden to Klune on the question whether there was good cause for his termination. This interpretation is consistent with the Court's prior interpretation of the same language in the employment agreements of Rutherford and Tara. As stated there, "[t]he termination language in Section 5 [providing severance pay] applies only if the Agreements are terminated prior to the end of the two-year term." Dkt. 320 at 7.

It is undisputed that Klune was terminated "without cause" on January 22, 2013. Counsel for Palo Verde, acting on behalf of his client, sent an email to Klune about his termination. It states that his termination was "without cause." Dkt. 350, Ex. 3.[15]

---

[14]  Palo Verde also contends that the doctrine of unclean hands precludes summary judgment as to Klune's breach of contract claim. This doctrine applies only to claims for equitable relief. The breach of contract claim here seeks only legal relief in the form of damages. Therefore, this doctrine does not apply. *Cf. Manufacturers' Fin. Co. v. McKey*, 294 U.S. 442, 451 (1935) (clean hands maxim inapplicable in action in which plaintiff sought "to secure the fruits of a perfectly valid, albeit a hard, contract"; "[i]t seems plain enough that in no aspect of the case is any equitable principle involved.").

[15]  Palo Verde has objected to the admission of this email as hearsay. Dkt. 365-45. This objection lacks merit. The email is admissible under Fed. R. Evid. 801(d)(2)(D) as a statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|----------|--------------------------|------|-----------------|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

b)      Contract Damages

Palo Verde next argues that Klune failed to prove the amount of damages from the claimed breach of contract. *Weinberg v. Whatcom Cnty.,* 241 F.3d 746, 751 (9th Cir. 2001) ("Because Weinberg failed to offer competent evidence of damages, dismissal on summary judgment was appropriate with respect to all claims for which Weinberg bore the burden of establishing the amount of actual harm he suffered as a result of the County's actions."). Palo Verde also cites *First Specialty Ins. Corp. v. NAIS, Inc.*, 459 F. Supp. 2d 1094, 1099 (D. Kan. 2006) for support. There, summary judgment was granted "as to the issue of liability on its breach of contract claim," but was denied "as to the issue of damages because a disputed issue of material fact clearly exists concerning the amount due and owing under the terms of the Operating Agreement." *Id.*

These cases do not apply. The contract provides a specific amount of the severance payment that is due upon a termination without cause – the amount of compensation due for a 12-month period based on the compensation then in place.

c)      Attorney's Fees

Section 13 of the Employment Agreement provides, "[i]f the services of any attorney by either party to secure the performance hereof, or otherwise upon the breach or default of either party, or if any judicial remedy or arbitration is necessary to enforce or interpret any provision of this Agreement, or the rights and duties of any person in relation thereof, the prevailing party shall be entitled to reasonable attorney's fees." Dkt. 350, Ex. 1 at 6. Klune seeks summary judgment as to an award of fees.

Klune's request is premature. There are various matters that remain at issue in this action. The nature, scope and reasonableness of fees associated with his claim for the payment of the 12-month severance cannot be determined in isolation. Rather, these issues overlap with the other claims advanced by each side in this action, and their potential competing requests for attorney's fees. Whether fees should be awarded to any party, and if so their amount, as well as potential offsets due to competing fee requests, are matters that can only be addressed at the conclusion of this entire matter. Accordingly, this portion of the present motion is DENIED, without prejudice to renewing this request at the conclusion of the action.

*                              *                              *

For the reasons, stated, Klune's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants' Motion for Summary Judgment is DENIED as to Klune's breach of contract claim.

## IV.    Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-01247 JAK (OPx) | Date | March 13, 2015 |
|---|---|---|---|
| Title | Dennis Rutherford v. Palo Verde Health Care District, et al. | | |

with those issues prior to trial...."" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010), (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

Defendants contend that two matters should be stricken from the FAC, which was filed on December 16, 2014. Dkt. 335. Each was added to Plaintiffs' claim brought under Cal. Lab. Code § 1102.5(b). The additional allegations are set forth as part of the description of the protected activities by Plaintiffs that led to the claimed retaliation. First, they refer to "Sahlolbei's unlawful conduct in creating an actionable and unlawful hostile work environment, including his practice of targeting and thus discriminating against women." FAC, Dkt. 335, ¶ 160(f). Second, they refer to "Sahlolbei's violation of California Penal Code section 487, subdivision (a), which criminalizes 'grand theft' defined as theft of $950 or more." *Id.* ¶ 160(g).

Defendants' prior motion to dismiss Plaintiffs' Cal. Lab. Code § 1102.5 claim was denied on November 25, 2014. Dkt. 321. Therefore, Plaintiffs did not have leave to amend the complaint as to this cause of action, and neither requested nor received leave to do so. Therefore, before amending this cause of action, Plaintiffs were required to have sought and received permission from the Court or from Defendants. Fed. R. Civ. P. 15(a)(2). They did not comply with these requirements.

This matter has been pending since July 2013. Dkt. 1. At the Scheduling Conference on November 18, 2013, the last day to amend pleadings was set for December 13, 2013. Dkt. 39. Since that time there have been many proceedings with respect to the pleadings during which there was ample opportunity for Plaintiffs to have sought further leave to amend. They have made no showing as to why these new allegations were not offered months ago. In addition, the cut-off date for non-expert discovery was January 2, 2015. Dkt. 319. Trial in this matter is set for April 21, 2015. Dkt.404. In light of this procedural history, as well as the prejudice that would result from new allegations being presented at the 11th hour when discovery has concluded, and Plaintiffs' failure to seek leave to amend their prior complaint in order to include the new allegations, the Motion to Strike paragraph 160(f)-(g) of the FAC is GRANTED.

## V.    Conclusion

For the reasons stated in this Order, Defendants' Motion to Dismiss and Motion for Summary Judgment (Dkt. 358) is **GRANTED IN PART** and **DENIED IN PART**. Klune's Motion for Partial Summary Judgment (Dkt. 350) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to Strike (Dkt. 348) is **GRANTED.**

**IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer    ak