1   Maria C. Roberts, SBN 137907
    mroberts@sgrlawfirm.com
2   Alison P. Adema, SBN 149285
    aadema@sgrlawfirm.com
3   Ryan Blackstone-Gardner, SBN 208816
    rbg@sgrlawfirm.com
4   SWEENEY GREENE & ROBERTS
    401 West A Street, Suite 1675
5   San Diego, CA 92101
    Telephone:  (619) 398-3400
6   Facsimile:   (619) 330-4907

7   Attorneys for Defendant Palo Verde Healthcare District

8               UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

10

11  DENNIS RUTHERFORD, an             Case No. EDCV13-01247 JAK (SPx)
    individual; PETER KLUNE, an       [Consolidated with Case Nos.
12  individual, and TARA BARTH, an    EDCV13-01249 JAK (SPx) and
    individual,                       EDCV13-01250 JAK (SPx)]
13
                  Plaintiffs,         Judge:  Hon. John A. Kronstadt
14                                    Magistrate Judge:  Hon. Sheri Pym
            vs.                       Action Date:  July 16, 2013
15                                    Discovery Cutoff:     January 2, 2015
                                      Pretrial Conference:  April 6, 2015
16  PALO VERDE HEALTH CARE            Trial Date:           April 21, 2015
    DISTRCT, a public entity; TRINA
17  SARTIN, an individual; SANDRA     **DEFENDANT PALO VERDE
    HUDSON, an individual; and DOES 1-**HEALTHCARE DISTRICT'S
18  50, inclusive,                    **CLOSING TRIAL BRIEF

19                Defendants.

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     KEY EVIDENCE AT TRIAL ...................................................................... 1

        A.   November and December 2012 ..................................................... 1

        B.   January 16, 2013 Meeting............................................................. 2

        C.   January 22, 2013 Meeting............................................................. 3

        D.   The Board Votes Not to Offer RUTHERFORD a
             New Contract .............................................................................. 4

III.    APPLICABLE LEGAL STANDARDS ........................................................ 4

        E.   Section 1102.5 Standard of Proof................................................. 6

        F.   Burton, Hudson and Sartin Had No Knowledge of
             Protected Activity ........................................................................ 7

        G.   Plaintiffs Also Failed to Prove Causation..................................... 8

IV.     PLAINTIFFS' DAMAGES .......................................................................... 9

        A.   Plaintiffs' Back Pay Claims Are Limited ..................................... 9

        B.   Plaintiffs Are Not Entitled To Front Pay.................................... 12

        C.   Plaintiffs Failed To Reasonably Mitigate Their Damages ............ 13

        D.   Plaintiffs' Emotional Distress Claim is Legally Deficient ............ 13

V.      CONCLUSION ......................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*Arroyo Vista Partn. v. Cnty. of Santa Barbara*
   732 F.Supp. 1046 (C.D. Cal. 1990) ............................................................ 6

*Bolton v. Pentagroup*
   2009 WL 734038 (E.D. Cal. 2009) .......................................................... 14

*Brazill v. Ca. Northstate*
   949 F.Supp.2d 1011 (E.D. Cal. 2013) ...................................................... 6

*Caudle v. Bristow Optical Co., Inc.*
   224 F.3d 1014 (9th Cir. 2000) ............................................................... 12

*City of Newport v. Fact Concerts*
   453 U.S. 247 (1981) ............................................................................. 12

*Coleman v. Quaker Oats Co.*
   232 F.3d 1271 (9th Cir. 2000) ................................................................. 7

*Daly v. Exxon Corp.*
   55 Cal.App.4th 39 (1997) ............................................................... 10, 11

*Gant ex rel. v. Wallingford Bd.*
   195 F.3d 134 (2d Cir. 1999) .................................................................... 8

Govt. Code §818 ...................................................................................... 12

*Gross v. FBL Financial Services, Inc.*
   557 U.S. 167 (2009) ............................................................................... 5

*Hammond v. Northland Counseling Center, Inc.*
   218 F.3d 886 (8th Cir. 2000) ................................................................ 13

*Harris v. City of Santa Monica*
   56 Cal.4th 203 (2013) ............................................................................ 6

*Manser v. Sierra Foothills Pub.*
   2010 WL 2465418 (ED Cal.) ............................................................. 9, 12

*McKennon v. Nashville*
   13 U.S. 352 (1995) ............................................................................... 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*
  521 F.3d 1097 (9th Cir. 2008) ........................................................................ 6

*Montoya v. Orange Cnty. Sheriff's Dep't*
  2014 WL 6389433 (C.D. Cal. Nov. 13, 2014) ............................................. 13

*Morgan v. Regents of Univ. of Cal.*
  88 Cal.App.4th 52 (9th Cir. 1982) ............................................................... 7

*Parker v. Twentieth Century-Fox*
  3 Cal.3d 176 (1970) ...................................................................................... 10

*Patten v. Grant Joint Union*
  134 Cal.App.4th 1378 (2005) ......................................................................... 7

*Pisciteli v. Friedenberg*
  87 Cal.App.4th 953 (2001) ........................................................................... 11

*Pollard v. E.I. du Pont de Nemours & Co.*
  532 U.S. 843 (2001) ...................................................................................... 12

*Roby v. McKesson Corp.*
  47 Cal.4th 686 (2009) as modified (Feb. 10, 2010) ................................... 11

*Ryan v. Raytheon Data Sys. Co.*
  601 F.Supp. 243 (D.Mass. 1984) ................................................................. 11

*Sarantis v. ADP, Inc.*
  2008 WL 4057007 (D. Ariz. 2008) ............................................................. 14

*Schimmel v. NORCAL Mut. Ins.*
  39 Cal.App.4th 1282 (1995) ......................................................................... 10

*St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mut. Ins. Co.*
  210 Cal.App.4th 645 (App. 2 Dist. 2012) .................................................... 10

*State v. Altus Fin.*, S.A.
  36 Cal.4th 1284 (2005) ................................................................................... 5

*Stoleson v. U.S.*
  708 F.2d 1217 (7th Cir. 1983) ..................................................................... 14

*Tavaglione v. Billings*
  4 Cal.4th 1150 (1993) .................................................................................... 11

iii

*Timms v. Rosenblum*
  713 F.Supp. 948 (E.D.Va.1989) .................................................................. 14

*Toscano v. Greene Music*
  124 Cal.App.4th 685 (2004) ....................................................................... 13

*U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp.*
  343 Fed.App'x 279 (9th Cir. 2009) ............................................................. 6

*U.S. ex rel. Satalich v. City of L.A.*
  160 F.Supp.2d 1092 (C.D. Cal. 2001) ...................................................... 12

*U.S. ex rel. Schweizer v. Oce N. Am.*
  956 F.Supp.2d 1 (D.D.C. 2013) ................................................................... 5

*University of Texas South. Med. Ctr. v. Nassar*
  133 S. Ct. 2517 (2013) ................................................................................. 5

*Veronese v. Lucasfilm Ltd.*
  212 Cal.App.4th 1 (2012) ............................................................................ 7

*Weber v. Tada*
  589 F.App'x 563 (2d Cir. 2014) cert. denied, (U.S. Apr. 6, 2015) .......... 8

*Young v. Bank of Am.*
  141 Cal.App.3d 108 (1983) ........................................................................ 14

**Statutes**

31 U.S.C. § 3730(h) ........................................................................................ 5

31 U.S.C. § 3730 (h)(2) .................................................................................. 9

42 U.S.C. § 2000e-3(a) ................................................................................... 5

Civil Code § 3289(b) ..................................................................................... 10

Government Code § 12653(b) ......................................................................... 9

Government Code § 12926 .............................................................................. 6

Government Code § 12963 .............................................................................. 5

Government Code § 53260 .............................................................................. 10

Government Code § 53260.1 ............................................................................ 2

Government Code § 54950 ............................................................................... 3

Government Code § 54952.2(a)....................................................................... 3

Government Code § 54952.2(b)(1) ................................................................. 3

Government Code § 54953(a) .......................................................................... 3

Labor Code § 98.6 ........................................................................................... 9

Labor Code § 98.6(b) ...................................................................................... 9

Labor Code § 1102.5 ............................................................................... 12, 14

Labor Code § 1102.5(b) .............................................................................. 6, 9

Labor Code §1102.6 ........................................................................................ 7

**Other Authorities**

CACI 2513 ........................................................................................................ 7

Ninth Circuit Model Jury Instruction 10.3 ................................................... 4

Ninth Circuit Model Jury Instruction 10.5C ............................................... 12

# I.

## INTRODUCTION

Plaintiffs have not proven that Sam Burton, Sandra Hudson or Trina Sartin had actual knowledge of their alleged protected activity or that these Board members ended Plaintiffs' employment because they had engaged in such activity. Rather, the evidence has proven beyond dispute that these three Board members acted in direct response to the devastating financial reports and projections provided by Plaintiffs. These Board members, who were not charged with or even capable of fixing the hospital's financial problems, made the decisions they believed were appropriate to keep the hospital open. The Board recognized a change in leadership was necessary, which was a reasonable judgment call when faced with the threat of closure and the lack of any strategy proposed by the Plaintiffs. Plaintiffs claim the Board's decision to change the leadership at PVHD was so out of the norm that it had to be retaliatory. Nothing could be further from the truth. Changes at the highest level are an essential and primary consideration when an organization is in crisis, as PVHD was in 2013. Had the Board failed to act, the citizens of Blythe could be without a hospital today—a result the Board avoided by making difficult decisions at a difficult time.

# II.

## KEY EVIDENCE AT TRIAL

### A.     November and December 2012

Sandra Hudson and Trina Sartin ran for and were elected to the PVHD Board on November 6, 2012, defeating Jim Carney and Rosalie Carlton. In the month between the election and when Ms. Sartin and Ms. Hudson were sworn into office, KLUNE tried to push through with members of the outgoing Board a number of agenda items that were neither urgent, nor in the best interests of the hospital or the people of Blythe. (Exh. A, p. App0090-93.) KLUNE did this in total disregard of a TRO issued by the Superior Court and the protests of the Blythe public. KLUNE admitted at trial that this was done deliberately, because he believed the newly elected

Board would not rubber stamp his requests (that benefitted KLUNE and increased his power) as the outgoing Board had done for years.  (*Id.*)  By the time Ms. Hudson and Ms. Sartin were sworn into office on December 7, 2012, KLUNE's antics and personal agenda had begun to breed mistrust with them and with the public.  This was compounded by KLUNE's 4 week vacation just after he pushed through his agenda. (Exh. A, p. App0093:17-20.)

Shortly after the new Board members were sworn into office on December 7, 2012, Board meetings were set to: (1) allow the public to voice concerns; (2) respond to complaints of Brown Act violations at the December 5, 2012 meeting; and (3) address concerns with existing District Counsel, Robert Patterson.  (*See*, Exhs. 94 and 96; Exh. A, pp. App00130-132.) At these meetings, the Board rectified the Brown Act violations (nullifying the December 5 meeting per Govt. Code § 53260.1) and retained Jeff Scott as interim counsel.[1]  (*See*, Exh. 96.)

**B.  <u>January 16, 2013 Meeting</u>**

Upon KLUNE's return from vacation, the Board called a special meeting for January 16, 2013 to obtain a long overdue report on the financials.  (*See*, Exhs. 97 and 98.)  RUTHERFORD reported at this meeting, ***for the first time,*** that the hospital's finances were in such a state of decline that the hospital was facing closure.  (Exh. 109, pp. App0013, 14, 27, 28, 36, 42; Exh. A, p. App00172-173.) Despite the precarious financial condition of PVHD, neither Plaintiff offered a plan or strategy to address the crisis. (Exh. A, App00138-139, 150-151, 173.)  The Plaintiffs also failed to warn the Board at any prior time about the grave financial problems the hospital was facing, despite having those problems ***for more than a year***.  (Exh. A, p. App00173.)  At meetings in 2012 Rutherford described the District's finances as

---

[1] **PVHD did not terminate Mr. Patterson. Rather, he stepped down to allow the Board to retain new counsel, which was not unusual or coerced. (Exh. A, p. App00112-113, 133-135.) Other attorneys completed their work for PVHD, including BBK.  Mr. Slovak moved to withdraw as counsel, because he had not been paid. (*Id.*)**

"hunky dory" and "okey-dokey," with no concern.  (Exh. A, p. App00146:6-20.)

KLUNE's only suggestion at the January 16 meeting, to meet separately the with Board "to develop that business plan," was a hollow gesture.  (Exh. A, p. App00101:18-25.) As KLUNE is well aware, it is unlawful for a quorum of the board to meet about any hospital business outside a properly noticed public meeting. *See*, Govt. Code §§54950; 54952.2(a), (b)(1), 54953(a). Moreover, it was the Plaintiffs' responsibility, (**not the Board's**) to manage the finances and develop financial plans.

## C.  January 22, 2013 Meeting

Following the January 16, 2013 meeting, efforts by Ms. Sartin and District Counsel, Jeff Scott, to meet with KLUNE to gain a better understanding of the financial plight of PVHD were unsuccessful as KLUNE was "unavailable."  (Exh. A, p. App00154-155.) Given the financial report on January 16 and KLUNE's non-responsiveness, the Board included on the January 22, 2013 agenda review of his performance.  (Exh. A, p. App00141/16-19.)  The agenda also included a financial update and addressing the Resolutions passed in November 2012, that were the subject of a Preliminary Injunction.  (Exh. A, p. App. 00140:6:9-7:12; Exh. 515.) The financial report given at the January 22 meeting was even worse than the January 16 report and showed another $1.3 million in losses. (Exh. A, App00142:4-12.)  Once again, the Plaintiffs offered no strategy, ideas, plan or measures for turning the finances around.  (Exh. A, p. App00142:17-143:3, p. App00174:23-174:12.) They also said nothing about what had been done to date to address the year-long financial decline of PVHD.  KLUNE was uncharacteristically silent and offered no explanation for his inaction or why the Board should view his performance as CEO favorably. (Exh. A, p. App00174:4-10.)

Consequently, when the Board met to review KLUNE's performance, it did so against the backdrop of horrific financial reports, reports of excessive compensation and KLUNE's seeming indifference to both the public and the fate of the hospital.

When the Board decided to terminate KLUNE, it was a 3-2 vote with Burton, Hudson and Sartin voting in favor of termination.  However, at that time these three Board members were not aware of investigations and reporting of false claims or any other matters, and did not base their decision on such activity.  Rather, the evidence proves that the only motivation the three Board members had in voting to terminate KLUNE related to the dire financial state of the hospital, KLUNE's failure to present a plan to save the hospital and concerns that his compensation was not sustainable.  (Exh. A, p. App00143:16-144:13; p. App00176; p. App00183-185.) Even Board member McLain did not approve of KLUNE's pay (Exh. A, p. App00102), and ***KLUNE testified he would not have agreed to reduce his pay***.  (Exh. A, p. App00105-107.)

**D.     The Board Votes Not to Offer RUTHERFORD a New Contract**

Upon KLUNE's departure, the Board asked RUTHERFORD to serve as interim CEO.  Despite the obvious need and expectation for an immediate and concrete financial strategy, RUTHERFORD presented none.  (Exh. A, p. App00146:21 147:10; p. App00177:20-178:4.) His only recommendation was to hire a bankruptcy attorney. (*Id*.)  In February 2013 the Board learned his contract was to expire and it had to decide whether to offer him a new contract.  Burton, Hudson and Sartin voted against a new contract based on Rutherford's own inaction in addressing reporting financial problems, his failure to present a plan to keep the hospital open, and his high cost to PVHD.  (Exh. A, p. App00145-147; p. App00178; p. App00187-188.) This vote was without knowledge or consideration of investigation/reporting by Plaintiffs, but was an exercise of the Board's best judgment under the circumstances. (Exh. A, p. App00156-157; p.App00182:13-24; p. App00186:14-187:7.)

## III.

## APPLICABLE LEGAL STANDARDS

**A.     FCA/CFCA Standard of Proof**

The Ninth Circuit Model Jury Instruction 10.3, submitted by both sides,

provides the essential elements of a Title VII retaliation claim, which is analogous to Plaintiffs' burden under the FCA/CFCA. Plaintiffs must prove that they: engaged in activity protected under the FCA/CFCA and were subjected to adverse employment action, "because of" their participation in protected activity.

> A plaintiff is "subjected to an adverse employment action" because of his participation in protected activity *if the adverse employment action would not have occurred __but for__ that participation*.  Model Instruction 10.3.

The comments to Model Instruction 10.3 state: "A plaintiff making a retaliation claim under § 2000e-3(a) must establish that [their] protected activity was a but-for cause of the alleged adverse action by the employer. *University of Texas South. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)."  Analyzing the text of Title VII, *Nassar* held that retaliation must be proven "according to the traditional principles of but-for causation[.]"  *Id*., *discussing Gross v. FBL Financial Services, Inc*., 557 U.S. 167 (2009) (ADEA requires "but-for" proof based on text). In contrast, discrimination claims under Title VII (not based on conduct but an employee's status or personal traits), are subject to the "mixed motive" standard and preclude damages when proven the same decision would be made without discriminatory motive.  *Id*. at 2526 – 2533.

Thus, Plaintiffs "must prove retaliation for protected activities was a 'but-for' cause of the adverse action."  *U.S. ex rel. Schweizer v. Oce N. Am*., 956 F.Supp.2d 1, 13-14 (D.D.C. 2013).  The FCA protects employees from retaliation "because of lawful acts" to stop false claims.  31 U.S.C. §3730(h); Govt. Code §12963.

> **[B]ecause the False Claims Act's retaliation provision includes the same key language as the Title VII retaliation provision recently interpreted by the Supreme Court in *Nassar*, and the ADEA discrimination provision interpreted in *Gross*, the Court must apply the same heightened causation standard here.  Id.** (emphasis added).

There is no principled basis to apply the "but-for" causation standard to the FCA claim and not also to the CFCA claim – which is patterned on the FCA "and it is appropriate to look to precedent construing the equivalent federal act." *State v. Altus Fin*., S.A., 36 Cal.4th 1284, 1299 (2005); *Mendiondo v. Centinela Hosp. Med. Ctr*.,

1   521 F.3d 1097, 1102 fn.3 (9th Cir. 2008).  By contrast, the CFCA is not patterned

2   after the Fair Employment & Housing Act ("FEHA") (Govt. Code §12926 *et seq.*),

3   and the California Supreme Court's holding that a FEHA plaintiff must prove his

4   employer's action was "substantially motivated" by discrimination is inapposite.  *See*,

5   *Harris v. City of Santa Monica,* 56 Cal.4th 203, 232 (2013).  Notably, *Harris*, did not

6   construe the causation standard in the context of any federal or state retaliation claim,

7   and construed FEHA as applying a mixed-motive standard like *discrimination* claims

8   under Title VII.  Therefore, where the employer proves it would have reached the

9   same decision absent an improper motive, damages are unavailable because this

10  would award "plaintiffs an unjustified windfall and unduly limit[] the freedom of

11  employers to make legitimate employment decisions."  *Id*. at 233.

12         Here, under these standards, Plaintiffs must prove the Board retaliated against

13  them ***specifically because Plaintiffs engaged in investigation and reporting of false***

14  ***claims***.  *See, Arroyo Vista Partn. v. Cnty. of Santa Barbara*, 732 F.Supp. 1046, 1054-

15  55 (C.D. Cal. 1990); (claims fail absent proof the board majority acted with

16  discriminatory intent).  Consequently, to prevail, Plaintiffs had to prove that at the

17  time of their separations, Burton, Hudson and Sartin all knew that Plaintiffs had

18  investigated and reported matters that could lead to a viable action under the FCA.

19  *U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp.*, 343 Fed.App'x 279, 281 (9th Cir.

20  2009) (actual knowledge of protected activity necessary to prove FCA liability);

21  *Brazill v. Ca. Northstate,* 949 F.Supp.2d 1011, 1023-1024 (E.D. Cal. 2013) (FCA

22  retaliation claim failed absent knowledge by decision-makers of employee's protected

23  conduct).

24  **E.    Section 1102.5 Standard of Proof**

25         To prevail under their section 1102.5(b) claim, Plaintiffs must prove: (1) they

26  engaged in protected activity; (2) were subject to adverse employment action, and (3)

27  a causal link between the two.  *Patten v. Grant Joint Union*, 134 Cal.App.4th 1378,

28

6

1384 (2005).  Essential to establishing the causal link under 1102.5 is proof ***the employer knew Plaintiffs engaged in protected activity***.  *Morgan v. Regents of Univ. of Cal.,* 88 Cal.App.4th 52, 70 (9th Cir. 1982).  Further, under 1102.5, even where protected activity was a contributing factor in adverse action, the employer is not liable if it proves the action would have been taken for legitimate, independent reasons.  *See*, Lab. Code §1102.6.

Significantly, it is not unlawful for an employer to terminate or take other adverse employment action against an at-will employee, even if the decision was mistaken, unwise or even for an unfair reason.  *Veronese v. Lucasfilm Ltd.*, 212 Cal.App.4th 1, 20 (2012) (prejudicial error to refuse to give "business judgment" instruction based on state and federal authority); CACI 2513 (based on *Veronese*); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (unwise business judgments and faulty evaluations are not discriminatory or retaliation).

## F.   Burton, Hudson and Sartin Had No Knowledge of Protected Activity

Despite the passage of two years since this case was filed, Plaintiffs have failed to present any evidence that Burton, Hudson and Sartin knew of their investigation and reports to government agencies.  In fact, the evidence presented proves the three Board members did not know Plaintiffs investigated and reported false claims of alleged kickbacks and patient transport issues.  (Exh. A, p. App0087:24-88:3, 11-21; p. App0075:13-24; p. App00117:14-118:7.) Vague references to Board member communications in 2012 is not evidence of actual notice by Burton, Hudson or Sartin. KLUNE admitted no recollection of any specific communications he had with Burton, Hudson or Sartin in 2012 or 2013.  (Exh. A, p. App0012:25-13:12, App0014:16-15:2.)  RUTHERFORD never spoke to Burton, Hudson or Sartin about any investigation and did not recall any discussions with them on any issue prior to being interim CEO after KLUNE's termination.  (Exh. B, App00191-197.) This utterly contradicts the telephonic testimony given by RUTHERFORD on Day 5 of the trial.

7

1  (*Id.*)

2      Plaintiffs' lack of evidence of communications with the three Board members

3  comports with the testimony of Burton, Hudson and Sartin that they were not aware

4  of investigations/government reports until after Plaintiffs left PVHD.  (Exh. A, p.

5  App00156-157; p. App00182:13-24; p. App00186-187.) As important, is the absence

6  of any evidence to contradict the concerns the three Board members' had when they

7  voted to end Plaintiffs' employment.  Evidence of the poor state of PVHD's finances,

8  Plaintiffs' lack of any plan or strategy, and the inflated/high cost to employ Plaintiffs

9  is **uncontroverted**.  In fact, these issues proved to be more serious than Plaintiffs had

10  initially disclosed, which further underscored the need for change.

11      If not for measures taken in 2013 and 2014 to cut costs and increase revenue,

12  PVHD would have closed.  (Exh. A, p. App00114-115.) Concerns about patient care

13  also proved to be worse than suspected, as the state audited and cited PVHD for

14  countless violations less than a month after Plaintiffs' departure.  (*See*, Exh. 486 and

15  Exh. A, p. App00116-118.) The long-standing deficiencies at PVHD took many

16  months to correct (Exh. A, p. App00129) and the hospital was transformed under new

17  leadership from grossly neglected to clean, safe and compliant.  (Exh. A, p.

18  App00116-118; p. App00119-129.) Evidence of the true extent of Plaintiffs'

19  mismanagement discovered after their employment ended proves the validity of the

20  Board members' legitimate reasons for terminating KLUNE's contract and not

21  offering a new contract to RUTHERFORD. *Weber v. Tada*, 589 F.App'x 563, 567 (2d

22  Cir. 2014) cert. denied, (U.S. Apr. 6, 2015); *Gant ex rel. v. Wallingford Bd.*, 195 F.3d

23  134, 147 at fn.17 (2d Cir. 1999). And, although KLUNE allegedly addressed similar

24  problems at PVHD in 2009, he failed to take any steps to do so in 2012/2013.

25  **G.**     **Plaintiffs Also Failed to Prove Causation**

26      Without proof of actual notice or retaliation, Plaintiffs hope the Court will

27  engage in an improper exercise of "connecting the dots" to establish causation.

28

However, no amount of dot-connecting can bridge the gap between Plaintiffs' investigation and reporting activities through PVHD's counsel, and an entirely unrelated decision made months later in response to the financial crisis the hospital was facing.  The law imposes specific standards of proof to avoid an unjust result where retaliation is not proven.  Applying those standards here, Plaintiffs' claims fail.  To find otherwise would circumvent well-established legal standards and have a chilling effect on the right and the obligation of pubic boards to make necessary and difficult personnel decisions.  It would also penalize PVHD for doing what any board would reasonably be expected to do under similar circumstances.

Even if the decisions of the Board could be viewed as short-sighted, impulsive or not well-considered, that does not make the decisions retaliatory or unlawful.  The Board is charged with making the best decisions it can to advance the interests of the District, based on the information provided to it.  Voting to replace the CEO/CFO who, by all accounts had nearly bankrupted the hospital, is not unusual or inappropriate given the finances in 2013.  That Plaintiffs disagree with the Board's decision cannot transform a legitimate business decision into one that is unlawful.

## IV.

## PLAINTIFFS' DAMAGES

### A.   Plaintiffs' Back Pay Claims Are Limited

The FCA/CFCA specifically enumerate back pay as a remedy.  31 U.S.C. §3730 (h)(2); Cal. Gov. Code §12653(b).  The Court has considered out-of-circuit authority and decided Plaintiffs may also seek front pay and emotional distress damages under the FCA (emotional distress damages are barred under the CFCA based on workers' compensation exclusivity).  (Dkt. 468, p. 3.)  **Under 1102.5(b), the sole remedy available to Plaintiffs is back pay**: "reimbursement for lost wages and work benefits." Cal. Labor Code §98.6; *Manser v. Sierra Foothills Pub.*, 2010 WL 2465418, at *2, 4 (ED Cal.) (remedies for 1102.5(b) violation found in 98.6(b)).

Here, Plaintiffs worked under fixed-term contracts, which expired on February 28, 2013 (for Rutherford) and February 28, 2014 (for Klune).  (Exhs. 111, App0044-51, and 449, App0060-67.)  Under a fixed-term contract, "the 'employment is terminated by ... [e]xpiration of its appointed term." *Schimmel v. NORCAL Mut. Ins.*, 39 Cal.App.4th 1282, 1286 (1995).  Thus, any "back pay" awarded must be limited to salary, if any, owed but not paid prior to expiration of the contract.  *Parker v. Twentieth Century-Fox*, 3 Cal.3d 176, 181 (1970).  Inasmuch as Plaintiffs did not prove retaliation or that their contracts would have been renewed, they cannot recover back pay after the expiration of their contracts.  *Daly v. Exxon Corp.*, 55 Cal.App.4th 39, 43-44 (1997).

When RUTHERFORD's contract expired on February 28, 2013 he was paid all amounts due and there is no evidence that it would have been renewed.  Therefore, RUTHERFORD is not entitled to *any* back pay.  His emails with Pat Lash prove he was always looking for a better opportunity and regarded PVHD simply as a place where the "pay is good" and the "four day week makes it nice." (Exhs. 508-511, App0068-79.)

KLUNE has already been awarded severance pay for the first 12 months he was out of work from January 23, 2013 to January 22, 2014.  (Dkt. 408, pp. 36.)  While the amount of severance owed remains in dispute[2] (*i.e.*, whether his damages for breach of contract are 12 months' salary ($440,650), or salary and deferred compensation ($36,350) and benefits), KLUNE cannot obtain a double recovery for

---

[2] **KLUNE's contract claim arises from a contract provision that his employment could be terminated if he was paid severance.  In January 2013, KLUNE's salary was $440,650 (Exh. 109, p.31) and PVHD disputes that his contract damages include payment of deferred compensation.  Govt. Code §53260 restricts severance in contracts with public employees and this Court has recognized that §53260 applies to Plaintiffs' contracts.  (Dkt. 320, p.10.)  Thus, KLUNE's severance is limited to 12 months' salary.  He is also not entitled to prejudgment interest under Civil Code §3289(b), as damages for his contract claim were not certain or liquidated as defined by the statute, but were actually in dispute.  *St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mut. Ins. Co.*, 210 Cal.App.4th 645 (App. 2 Dist. 2012).**

economic losses during the 12 month period after his termination.  Rather, his recovery must be limited to the 36 days left on his contract term, from January 23, 2014 and February 28, 2014. *Roby v. McKesson Corp.*, 47 Cal.4th 686, 702 (2009), as modified (Feb. 10, 2010) (Court should only award economic damages once even though various theories of recovery are pled), *citing Tavaglione v. Billings*, 4 Cal.4th 1150, 1158-59(1993); *Ryan v. Raytheon Data Sys. Co.*, 601 F.Supp. 243, 253 (D.Mass. 1984) (Back pay is reduced by any severance paid).  KLUNE's annual salary at termination was $440,648 and yields a daily pay rate of $1,207.25.  Hence, <u>at most</u>, Klune would be entitled to back pay of $43,461.00 for that 36 day period.

KLUNE and RUTHERFORD did not come close to proving their contracts with PVHD would have been renewed upon their expiration.  They presented no evidence on that issue whatsoever.  This bars any back pay for RUTHERFORD as of February 28, 2013 and for KLUNE as of February 28, 2014.  Plaintiffs' expert Brian Brinig made wholly unreliable and inadmissible damages calculations, assuming falsely that Plaintiffs' contracts would be automatically renewed for 10 straight years, while ignoring the legal restrictions on contracts with public employees, the financial condition of PVHD and Plaintiffs' performance.  (Dkt. 468, p. 3.)  Damages which are "speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery."  *Pisciteli v. Friedenberg*, 87 Cal.App.4th 953, 989 (2001).  For this reason, Plaintiffs cannot recover any back pay after their contract terms expired. *Daly*, 55 Cal.App.4th at 44.

Plaintiffs also cannot recover economic losses beyond the dates they would have been terminated due to KLUNE's HIPAA violations, **discovered in December 2013** and the Stark violations allowed by both Plaintiffs, **discovered in February 2014**.  (Exh. A, p. App00148-153; p. App00179/25-182/12.)  Once these issues were discovered by the PVHD Board, it understandably would have voted to terminate the Plaintiffs.  PVHD could not justify employing a CEO who took private patient

information regarding thousands of PVHD patients for personal use.  Likewise, while Plaintiffs profess to be concerned about Stark, they allowed Stark violations to persist over a period of years at PVHD, resulting in findings against PVHD and a fine of more than $140,000.  This conduct unquestionably would have resulted in Plaintiffs' termination had they remained employed by PVHD and extinguishes any damages beyond the dates this conduct was discovered.  9th Cir. 10.5C; *McKennon v. Nashville,* 13 U.S. 352, 361-362 (1995).

Plaintiffs' request for double back pay should also be rejected, because they have not proven retaliation and because this remedy is "unavailable or reduced in magnitude, when the employer is a government entity" and immune from punitive damages. *U.S. ex rel. Satalich v. City of L.A.,* 160 F.Supp.2d 1092, 1109, 1110 (C.D. Cal. 2001).  The imposition of every remedy in 3730(h), such as double back pay, "is not mandatory." *Id*. at fn. 6.  An award of double back pay contradicts federal and state law immunizing local agencies from punitive damages for strong policy reasons. *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); Govt. Code §818.

**B.**    <u>**Plaintiffs Are Not Entitled To Front Pay**</u>

Although the Court ruled it will consider whether Plaintiffs are entitled to front pay under FCA/CFCA, front pay, is not recoverable under 1102.5.  *Manser, supra*. Regardless, to avoid any potential for a windfall, front pay must be tempered.  *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000).  Front pay is "temporary in nature," limited to when a plaintiff finds or reasonably should find new employment.  *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 850 (2001). Here, both Plaintiffs each found new employment paying them salaries within current market rates and neither offered any evidence contradicting those market rates.  (Exh. A. p. App00158-167.) Given this authority, Plaintiffs are not entitled to front pay.[3]

As discussed above, Plaintiffs' expert, Brinig, based his entire front pay

---

[3] **Plaintiffs "diminished" earning capacity claim has been dismissed.  (Dkt. 485.)**

1    opinion on a false and speculative assumption rejected by the Court - that Plaintiffs'

2    contracts with PVHD would automatically renew for 10 straight years.  (Dkt. 485,

3    Exh. A. p. App00170-171.) Brinig's testimony was previously stricken by the Court

4    and cannot be considered. (Dkt. 468, p. 3.) *Toscano v. Greene Music*, 124

5    Cal.App.4th 685, 696 (2004) (opinion excluded where expert failed to establish

6    definite expectation of employment, rendering opinion "wholly conjectural.");

7    *Montoya v. Orange Cnty. Sheriff's Dep't,* 2014 WL 6389433, at *8 (C.D. Cal. Nov.

8    13, 2014) (Brian Brinig's testimony excluded as speculation).

9    **C.**    **Plaintiffs Failed To Reasonably Mitigate Their Damages**

10        The mitigation evidence produced by Plaintiffs establishes that KLUNE spent a

11    mere 19% of his time post-termination looking for work and RUTHERFORD spent

12    approximately 18% of his time trying to find a new job.  (Exh. A, p. App00164 - 166.)

13    Both Plaintiffs also admitted they were offered and rejected employment as CEO and

14    CFO with market rate salaries: *i.e.*, Mendocino Coast Hospital offered CEO position

15    to KLUNE in November 2014 and Bakersfield Heart Hospital offered CFO position

16    to RUTHERFORD in May 2013. This bars all of Plaintiffs' economic loss.

17    **D.**    **Plaintiffs' Emotional Distress Claim is Legally Deficient**

18        In *Hammond v. Northland Counseling Center, Inc.,* 218 F.3d 886 (8th Cir.

19    2000), the out-of-circuit case Plaintiffs cite to pursue emotional distress damages at

20    trial under the FCA, the Eighth Circuit held that that emotional distress damages

21    "require proof of evidence of the nature and extent of emotional harm caused by the

22    alleged violation."  *Id.* at 893.  In contrast, *Plaintiffs failed to present any specific*

23    *facts of actual emotional harm or proof of a causal relationship between their*

24    *conclusory statements of harm and their claims of retaliation.*  In fact, the only actual

25    evidence of causation for any purported harm was KLUNE's testimony that his

26    sleeplessness was caused by this litigation, as opposed to any retaliation:

27
28          I'm anxious in large part because I feel like a bad guy.  That I've been painted as the bad guy as opposed to what I was hoping and trying to do, was obey the

law and do the right thing." . . . "I think last night I had a sleepless night because I sat here and had to listen to counsel malign my reputation once again. (Exh. A, p. App0086-87.)

Emotional distress caused by litigation *is not recoverable*. *Sarantis v. ADP, Inc.*, 2008 WL 4057007, at *8 (D. Ariz. 2008), *citing Stoleson v. U.S.*, 708 F.2d 1217, 1223 (7th Cir. 1983) .

KLUNE's self-described "moments" of anxiety and depression also do not support an award of damages. (Exh. A, p. App0086-87.) RUTHERFORD's testimony of being angry and anxious was also not supported by evidence of a causal connection to any alleged retaliation. (Exh. A, p. App0086.) Fleeting and superficial experiences of distress are not compensable. *Young v. Bank of Am.*, 141 Cal.App.3d 108, 114 (1983) (emotional damages must be substantial, not trivial or transitory). Plaintiffs must prove "more than transitory symptoms" and "unsupported self-serving testimony by a plaintiff is not sufficient." *Bolton v. Pentagroup*, 2009 WL 734038, at *10 (E.D. Cal. 2009). Thus, no damages should be awarded for emotional distress. (*Id*.)

# V.

## CONCLUSION

Plaintiffs expect the Court to believe that they were victimized by PVHD. That is diametrically opposed from the truth. Plaintiffs took advantage of this public healthcare district in every way possible from the commencement of their employment to the present date. They manipulated an unsophisticated Board that depended heavily on their expertise and their claimed integrity, and finagled exorbitant salaries and benefits far in excess of what the market would bear.

Laws like the FCA/CFCA and 1102.5 do not exist to protect people like KLUNE or RUTHERFORD, who failed to perform the essential duties of their jobs, while lining their wallets and advancing their agenda. They were opportunistic from beginning to end. KLUNE managed to obtain pay increases that more than doubled

the amount PVHD contracted to pay him from 2009 to 2011.  In lieu of being paid $250,000/year in 2010 and 2011 as required by his contract, KLUNE pushed for contract revisions that netted him $450,000 in each of those years.  (Exh. 109, p. App0031.)  KLUNE's effort to explain this as changing from "interim" CEO to "permanent" CEO is proven false by the very contract he signed.  (Exh. 408, App0052-59.) RUTHERFORD received a $75,000 pay increase in his first 90 days at PVHD, and $20,000 a few months later, all approved by KLUNE.  (Exh. 446, App0060-67 and Exh. A, p. App00109.) In 2011, Plaintiffs convinced the Board to establish a deferred compensation system that applied **only to them** as a means of receiving an additional $35,000/year.  They also engineered 4 day work weeks, had more than 10 weeks of paid time off and had generous severance provisions added to their employment contracts. Plaintiffs' pay multiplied during the financial decline of PVHD, was 200% more than either had ever earned and was more than any rural hospital in the state of California paid.  (Exh. A. pp. App00158-159, 161-163, 165, 167.)

Plaintiffs ask this Court to order PVHD to pay them $3 to $5 million in damages, which underscores their greed and indifference to PVHD and the people it serves.  Not only would such an award cause the closure of PVHD, but it would reward Plaintiffs for their mismanagement and compound the problems they caused it. Fortunately, the law does not allow any recovery where, as here, Plaintiffs failed to prove the three Board members knew of their protected activity and retaliated against them because of it.  Because they have not met their burden, they cannot recover any amount from PVHD on any of their retaliation claims.

DATED:  May 18, 2015                    SWEENEY GREENE & ROBERTS


                                        By: _/s/ Maria C. Roberts_____
                                            Maria C. Roberts
                                            Attorneys for Defendant
                                            Palo Verde Healthcare District